The COALITION OF BLACK
LEADERSHIP, etc., et al.,
Plaintiffs, Appellees,

v.

Vincent A. CIANCI, Jr., etc., et al.,
Defendants, Appellees,

Providence Lodge No. 3, Fraternal Order
of Police, Defendant, Appellant.

No. 77–1381.

United States Court of Appeals,
First Circuit.

Argued Nov. 8, 1977.
Decided Jan. 27, 1978.

Joseph F. Penza, Jr., Providence, R. I., for defendant, appellant.

David F. Reilly, Providence, R. I., with whom Alden C. Harrington, Providence, R. I., was on brief, for Coalition of Black Leadership, etc., et al., plaintiffs, appellees.

Vincent J. Piccirilli, Providence, R. I., on brief for Vincent A. Cianci, Jr., defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

In 1971 a class action suit was filed in the district court of Rhode Island on behalf of the black residents of the city of Providence alleging various violations of the civil rights of the plaintiff class by the defendants, various police officers and public officials of Providence. After trial a consent decree was entered into and filed in March, 1973. The decree provided for a procedure through which civilians' complaints against police officers could be filed, investigated, and resolved. In 1976 the Rhode Island Legislature enacted a law, the "Law Enforcement Officers' Bill of Rights" which required certain procedures to be followed in the processing of civilian complaints against police officers. This law conflicted in part with the terms of the consent decree. The city of Providence, apparently finding itself bound by inconsistent legal requirements, moved for relief from judgment. Plaintiffs and defendant, the Fraternal Order of Police of the City of Providence (hereinafter F.O.P.), filed memoranda with the district court. The court construed defendant's memorandum as a motion to vacate the consent decree, denied the motion, and ordered both parties to work out modifications in the decree so that the protection of policemen's rights mandated by state law and the right of plaintiffs to be free from "racially discriminatory police conduct" could to the extent possible, both be achieved. Defendant appeals that order.

Defendant raises two arguments in urging that the consent decree be vacated in its entirety. First, they maintain that the relevant facts of the case have changed so much since the entering of the consent decree that principles of equity and fairness require that the decree be vacated. Second,

they argue that according to the holding of *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1975), the district court did not have sufficient jurisdiction over the original case to enter a consent decree and that this jurisdictional failure can be raised by the parties at any time to vacate a consent decree. We shall examine each contention in turn.

■ There is little dispute that a sufficient change in circumstances is a meritorious reason for a court to modify an injunctive or consent decree. Defendant's position appears to be that the procedures required by the new state law make the provisions of the consent decree unnecessary and that the continued application of the decree would result in unfairness since Providence police officers would be subject to different regulations than would the police officers in other parts of Rhode Island. We do not agree with defendant's analysis. The consent decree at least in part was designed to protect the rights of those citizens who felt themselves to be aggrieved by unconstitutional police misconduct. The purpose of the new state legislation was to protect police officers from any impairments of their rights when their conduct is questioned. While there is obvious subject matter overlap between the decree and the legislation, it is also obvious that neither was developed to meet these dual and partially inconsistent purposes. We do not see how we can accept as an abstract proposition—and defendants have supplied us with no actual evidence to bolster their position—that the additional incremental requirements imposed by the consent decree but not mandated by the new state legislation are so onerous that they amount to unfair hardships inflicted on police officers and yet are so marginal that they provide no additional protection to civilian complainants.

■ Moreover, the fact that the new legislation might accomplish much of what a consent decree was designed to achieve cannot be viewed as justification for vacating the decree. In *United States v. Swift & Company*, 189 F.Supp. 885, 906 (N.D.Ill. 1960), *aff'd mem.*, 367 U.S. 909, 81 S.Ct. 1918, 6 L.Ed.2d 1249 (1961), the court dispensed with a similar argument attacking the continued validity of an antitrust consent decree by explaining, "It is of no avail to argue . . . that the antitrust laws, including revised Section 7 of the Clayton Act, 15 U.S.C.A. § 18, concerning mergers, and the Robinson-Patman Act, 15 U.S.C.A. §§ 13–13b, 21a concerning predatory price-cutting, now provide ample remedies for future violations. The public now enjoys the specific protections of a decree."

Finally, the district court clearly pointed out in its order of July 18, 1977 that it would make every effort to see to it that policemen in Providence received all the protection provided for by the Law Enforcement Officers' Bill of Rights consistent with an effective civilian complaint system.[1] Given the lower court's flexibility we fail to see how defendant can maintain that it will suffer undue hardship or that any difficulty it experiences would not be necessitated by the same initial needs which provoked the original lawsuit and eventually the consent decree.

Defendant's second argument is that at this late stage it should have the consent decree vacated because under the holding of *Rizzo v. Goode, supra*, the district court did not have jurisdiction to enter any form of decree in this case. While defendant asserts that it wishes only to prevent the prospective application of the decree, its argument would seem to suggest either that the consent decree was void at its

1. We take particular note of the district court's statements that "[T]he Court is inclined to look with deference upon the alternate procedural means embodied in the 1976 Act . . ." and that "If the Rhode Island legislature has determined that the rights of police officers are in need of protection and that this protection can best be achieved by adoption of certain procedural protections, the Court is not prepared to question this judgment or to stand in the way of its implementation in the absence of any showing that the 1976 Act will hamper the effective presentation of civilian complaints which the consent decree has apparently accomplished."

origin because of lack of jurisdiction or that *Rizzo v. Goode* changed the law in this area so that jurisdiction which was proper in 1973 would not exist if the suit were brought today. We admit to a certain degree of confusion as to the actual holding of *Rizzo*. The Supreme Court explained that it had serious doubts "whether on the facts as found there was made out the requisite Art. III case or controversy between the individually named respondents and petitioners", and that "insofar as the individual respondents were concerned, we think they lacked the requisite 'personal stake in the outcome' . . . i. e. the order overhauling police disciplinary procedures." Id. 423 U.S. at 371–73, 96 S.Ct. at 604. However, the Court noted that the case did not arise on the pleadings, that the district court's interpretation of § 1983 had somehow bridged the gap between the facts established and the relief sought, and that therefore the Court's conclusion as to whether or not there was a case or controversy did not end the matter. The Court then spent the bulk of its opinion refuting the district court's view of the scope of § 1983 jurisdiction.

We are inclined to understand this analysis as suggesting that whether or not there was a case or controversy in *Rizzo* depended on whether § 1983 established a statutory nexus between the class of plaintiffs and the named defendants in terms of the conduct allegedly perpetrated in violation of the plaintiffs' constitutional rights.[2] Fortunately, the decision of the case before us does not require us to conclusively determine the sweep of *Rizzo's* holding. The Supreme Court has stated specifically that errors in deciding whether or not a suit presents a case or controversy are not open to attack by a motion to vacate after a consent decree has been entered. In *Swift and Co. v. United States*, 276 U.S. 311, 326, 48 S.Ct. 311, 72 L.Ed. 587 (1927), defendant had urged the lower court to vacate a consent decree on the grounds that when the decree was entered there was no case or controversy "within the meaning of § 2 of Article III of the Constitution." The Supreme Court affirmed the denial of the motion stating, "the objection is one which is not open on a motion to vacate. The court had jurisdiction both of the general subject-matter—enforcement of the Anti-Trust Act—and of the parties. If it erred in deciding that there was a case or controversy, the error is one which could have been corrected only by an appeal or by a bill of review. . . . On a motion to vacate, the determination by the Supreme Court of the District that a case or controversy existed is not open to attack." *See also Walling v. Miller*, 138 F.2d 629 (8th Cir. 1943).

This doctrine is consistent with the recent law of our circuit. In *Lubben v. Selective Service System Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir. 1972), we stated, "In the interest of finality, the concept of void judgments is narrowly construed. While absence of subject matter jurisdiction may make a judgment void, such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction. A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void. Only in the rare instance of a clear usurpation of power will a judgment be rendered void. . . . [Such a] determination could have been attacked in an appeal, but, . . . [if] it was not a clear usurpation

---

**2.** The Court appeared to be saying that the fact that some small percentage of a large class of citizens suffered deprivations of federal rights inflicted by a small number of police subordinates (not named as parties in the suit) did not create a case or controversy between the plaintiff class as a whole and the named defendants, the highest ranking city and police officials. The theory that the creation of appropriate police disciplinary procedures by the named defendants might somehow reduce the number of incidents perpetrated by police subordinates on members of the plaintiff class was considered too attenuated to support federal jurisdiction over the suit unless § 1983 could be interpreted to hold officials liable for their failure to correct the actions of a small percentage of their subordinates over which they had no direct and immediate responsibility. The Court ultimately concluded that § 1983 could not be so interpreted.

of power, it is now res judicata and immune from collateral attack."

■ There is no question that the district court in the present case had general subject matter jurisdiction of the enforcement of the Civil Rights Acts and that it had in personam jurisdiction over the parties. Its conduct was not a clear usurpation of power and as such may not be reviewed through a motion to vacate filed years after the consent decree was filed. Thus the original consent decree may not now be held to have been void at its origin.

Defendant refers in its brief to Rule 60(b)(5) of the Federal Rules of Civil Procedure which permits relief from a final judgment if "a prior judgment upon which it is based has been reversed or otherwise vacated or it is no longer equitable that the judgment should have prospective application." [3] It also cites *Theriault v. Smith*, 523 F.2d 601 (1st Cir. 1975), in which we applied Rule 60(b)(5) in affirming the district court's order vacating a consent decree when the decree was based on first circuit decisional law subsequently vacated and contradicted by the Supreme Court. However, defendant is mistaken if it assumes that the holding in *Theriault* implied that Rule 60(b)(5) should be applied broadly. The exact opposite is the case. As we stated in *Lubben v. Selective Service System Local Bd. No. 27, supra*, 453 F.2d at 650, "For a decision to be 'based on' a prior judgment within the meaning of Rule 60(b)(5), the prior judgment must be a necessary element of the decision, giving rise, for example, to the cause of action or a successful defense. . . . It is not sufficient that the prior judgment provides only precedent for the decision. 'It should be noted that while 60(b)(5) authorizes relief from a judgment on the ground that the prior judgment upon which it is based has been reversed or otherwise vacated, it

does not authorize relief from a judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding.' 7 Moore's Federal Practice ¶ 60.26[3] at 325." The key to the holding in *Theriault* is the extremely close nexus between the consent decree and a particular statutory interpretation that was directly overruled.

■ Here, defendant does not inform us of any prior authority forming the basis of the 1973 consent decree which was overruled by *Rizzo v. Goode*. This is understandable since the decision in *Rizzo* may be totally consistent with prior case law. The Court emphasized that the lower court's interpretation of § 1983 was "unprecedented", *id.* 423 U.S. at 373, 96 S.Ct. 598. Moreover, it specifically approved prior case law such as *Allee v. Medrano*, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974); *Hague v. CIO*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); and *Lankford v. Gelston*, 364 F.2d 197 (4th Cir. 1966), but distinguished them from the facts of *Rizzo*. We are totally unwilling to permit Rule 60(b)(5) to be invoked to vacate a consent decree allegedly based on unspecified prior law which has not been directly overruled. If defendant believed that the facts in plaintiffs' complaint were not sufficient to state a cause of action under § 1983 or to create a case or controversy, a question we do not pass judgment on in this opinion, it should not have agreed to a consent decree and should have appealed the decision of the district court if it held against them. Instead it decided to accept a consent decree. There has not been the kind of change in the law since that time to require us to relieve the defendant of the consequences of its decision.

Finally, we reject defendant's contention that general principles of equity should

---

**3.** Defendant cites Rule 60(b)(5) in its first argument that a change in factual circumstances requires vacating the consent decree and does not specifically argue that the rule should be applied because of the alleged change in the law embodied in *Rizzo v. Goode, supra*. However, defendant does discuss *Theriault v.* *Smith, supra*, at length. We interpret that discussion to raise the additional argument that the allegedly new interpretation of § 1983 and the requirements of presenting a case or controversy as explained in *Rizzo v. Goode* should permit the invocation of Rule 60(b)(5) to support vacating the consent decree.

move us to reverse the district court's decision. The district court, as we noted previously, is seeking to modify the decree to do justice to all the parties involved. It has given no indication that it views the consent decree as a rigid formalistic legal edifice immune from alteration. The only requirement it has suggested is that the modified decree must continue to protect the rights of the plaintiff class. We fail to see the lack of equity in such a resolution to this case.

*Affirmed.*