The COALITION OF BLACK LEADERSHIP et al.

v.

Vincent A. CIANCI, Jr., Mayor of the City of Providence, et al.

Civ. A. No. 4523.

United States District Court, D. Rhode Island.

Dec. 10, 1979.

Barbara Hurst, David B. Neumeyer of R. I. Legal Services, Inc., Providence, R. I., for plaintiffs.

Joseph F. Penza, Jr., Providence, R. I., Attorney for Prov. Lodge of Fraternal Order of Police, Vincent J. Piccirilli, Providence, R. I., for City of Providence.

## OPINION

PETTINE, Chief Judge.

After the trial of a civil rights complaint filed on behalf of the black residents of the City of Providence alleging a pattern or practice of brutality by the defendants, various police officers and public officials, a consent decree was entered into and filed in March 1973. This decree established certain procedures for the filing, investigation, and resolution of civilian complaints against the police officers. A defendants' motion for relief from the decree was denied by this Court in June 1977, and subsequently affirmed by the Court of Appeals. It rejected the defendants' contention that there was a sufficient change of circumstances to warrant a modification of the 1973 order, and that the teachings of *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1975), required the vacating of said order in its entirety because this Court had not had sufficient subject matter jurisdiction in the first instance. The Fraternal Order of Police, one of the defendants, now seeks a modification by adding two new sections. It wants civilian complaints continued "if there are criminal charges (stemming from the incident complained of) pending against" the officer. As reasons for this change, it argues "in addition to filing civilian complaints with the Providence Police Department, some complainants have also filed complaints with the Federal Bureau of Investigation or the State Attorney General's Office." Defendant's Memorandum in Support of the Motion to Modify at p. 2. It further contends that since it is the practice of the police department to grant complainants who are under criminal investigations continuances, the same consideration should be given to the police. Specifically it states, "[t]he purpose of [defendant's] motion to modify the Consent Judgment is to give the Providence police officer the same constitutional rights that a complainant now enjoys." *Id.* The defendant claims that the postponement is nothing more than an "option . . . to invoke his (the officer's) Fifth Amendment rights." *Id.*[1]

The plaintiff attacks the defendant's motion on three grounds—1) it is untimely, 2) it does not allege ground sufficient for relief from a judgment and 3) the defendant is not entitled to relief on the merits of its proposed modification.

■ "There is little dispute that a sufficient change in circumstances is a meritori-

---

1. The plaintiffs in their excellent brief correctly point out that, "It should be noted that there is no provision for continuances to either party in the decree as it now stands. The Police Department's granting of continuances to a requesting complainant is a practice outside the terms of the decree . . . ."

ous reason for a court to modify an injunction or consent decree." *Coalition of Black Leadership v. Cianci,* 570 F.2d 12, 14 (1st Cir. 1978). This assertion by the appellate court confirmed my own statement in the same case that "[a] court of equity retains power to alter or amend its continuing decrees to reflect changed circumstances whether those decrees are entered with the consent of the parties or depend entirely on the coercive power of the court." C A No. 4523 (D.R.I.1977). Therefore, the only question remaining is whether enough has been shown to justify any modification. *United States v. Swift & Co.,* 286 U.S. 106, 115, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932) ("Power to modify existing, we are brought to the question whether enough has been shown to justify its exercise.")

■ The change in circumstances relied on by the defendant falls short of being sufficient to justify altering the present decree, which has, from its entry, accomplished its intended result. In considering any modification of such an order the Court must be circumspect and do so only when new conditions result in "grievous wrong" creating "extreme" and "unexpected hardship." *See U. S. v. Swift, supra* at p. 119, 52 S.Ct. 460; *Mayberry v. Maroney,* 529 F.2d 332, 337 (3rd Cir. 1976).

■ None of these conditions prevails in the present case; besides, in the exercise of its equity powers, the Court cannot ignore the effect any change might have on the party opposing the motion. Here, it is considerable. To postpone the administrative hearings, which were designed to protect the black population of this city, until all criminal "investigations" are "disposed of" and wait until criminal prosecutions are completed, will inordinately delay the very purpose of the decree. It would be meaningless to attempt such a hearing months, perhaps years, after the complaint was initiated; it would result in a denial of justice. Volatile situations, which prefaced and gave rise to the decree at issue, must be

addressed speedily and meaningfully—the aggrieved citizen must be afforded quick and pronounced redress against the errant officer.

■ In deciding whether continuing decrees should be modified, *Swift* teaches that the "grievous wrong" test is applicable if it creates extreme and unexpected conditions. In deciding this the trial judge must also consider the circumstances surrounding the entry of the decree, *i. e.,* whether by consent or fully contested through appeal.

In this case the need for prompt action is as evident today as it was in 1973, and no grievous wrong now arises because of unforeseen conditions. *See Swift, supra,* 286 U.S. at 19, 52 S.Ct. 460. Finally, this was a negotiated decree and this defendant cannot repeatedly seek modifications for reasons which, in hindsight, may make the impact of the order more tolerable, but present no new inequitable hardship. The United States Supreme Court in *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), where a petitioner moved to vacate a denaturalization judgment which was not appealed, stated

> Petitioner made a considered choice not to appeal . . .. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong . . .. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from. *Id.* at 198, 71 S.Ct. at 211.

■ True enough, the consent aspect, though important, is not absolute. There can be developing circumstances which warrant relief—but a mere change of events is not enough in spite of the fact the defendant seems to think so in resting on the following language from *Swift:*

> We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though

it was entered by consent . . .. A continuing decree of injunction directed to events to come is *subject always to adaptation as events may shape the need.* . . . The result is all one whether the decree has been entered after litigation or by consent. 286 U.S. at 114–115, 52 S.Ct. at 462. (emphasis added by defendant)

I start by stating that I am not persuaded there have been any developing events in the case but, in extremus, if we assume there have been such developing circumstances, they fail to meet the standard articulated in *Swift, supra,* which the defendant fails to quote:

There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making. We are not at liberty to reverse under the guise of readjusting. . . . Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned. *Id.* at 119, 52 S.Ct. at 464.

The defendant also relies on *King-Seeley Thermos Co. v. Aladdin Industries, Inc.,* 418 F.2d 31 (2nd Cir. 1969), wherein the court stated

A case like this involves no such sharp conflict between wrong-doing and right-doing as did *Swift.* It presents rather the need for drawing the line between two kinds of right-doing . . . *Id.* at 35.

While changes in fact or law afford the clearest bases for altering an injunction, the power of equity has repeatedly been recognized as extending also to cases where a better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes. *Id.*

██ This test is inapposite in the case at issue. There is no showing that the decree has not achieved the relief intended or, to use the very words of the quoted language, the defendant offers no evidence to establish that "the decree is not properly adapted to accomplish its purpose." Certainly, when this is so the applicable standard is different, and it then becomes the duty of the court to achieve the intended objective. *United States v. United Shoe Machinery Corp.,* 391 U.S. 244, 249–50, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968) (decree after 10 years not achieving its "principal objects"). The *King-Seeley* test is applied when the parties, in the main, possess equal equities and seek to better accomplish the purpose of the decree. The plaintiff correctly argues that in this case "[t]he consent decree was designed to protect the rights of citizens who were aggrieved by unconstitutional police conduct. *See The Coalition of Black Leadership, et al. v. Cianci, et al., supra,* 570 F.2d at 14. Defendant has not alleged that the rights of these citizens are endangered by the present complaint procedure, nor has it shown how such rights would be better protected . . . [nor has the defendant shown] that purposes of the decree are not being accomplished . . ." Plaintiffs' memorandum at 8. I quite agree with the plaintiffs that it cannot be said that the police are suffering any hardship as a result of the current complaint procedure.

Actually the very heart of the defendant's position is the fear of self-incriminating statements being used against the testifying officer in some other trial, or adverse inferences being drawn from his failure to testify before the hearing officer.[2] This fear is to be distinguished from the

---

2. In its brief the defendant F.O.P. states:
[t]he F.O.P.'s position has been that an individual's Fifth Amendment right supersedes

the purpose for which the hearings have been established and consequently has never objected to a continuance [which the F.O.P.

situation where the exercise of the privilege against self-incrimination can result in the direct imposition of sanctions against the person asserting it. *See de Antonio v. Solomon,* 42 F.R.D. 320 (D.Mass.1967) (court refused to default defendant who exercised privilege: "Such a sanction would make the assertion of that privilege indeed 'costly,' and would be the kind of watering down of the privilege which the Supreme Court has clearly proscribed."); *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).

Appellate teachings from the First Circuit obviate any need to consider at length the defendant's position. The cases cited to the Court are directly on point—*Arthurs v. Stern,* 560 F.2d 477 (1st Cir. 1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782; *Gabrilowitz v. Newman,* 582 F.2d 100 (1st Cir. 1978).

In *Arthurs v. Stern* (a doctor requesting a continuance of disciplinary proceedings until disposition of criminal charges) the court stated at 478–479 that a hearing board

is not constitutionally forbidden from drawing an adverse inference if a doctor [under disciplinary and criminal investigation] refuses to testify at a disciplinary hearing. The board is not conducting a criminal trial, and civil proceedings are governed by a different set of Fifth Amendment principles. . . . *See, e. g., Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977). But this principle does not control when the only consequence of silence is the danger that the trier of fact will treat silence as evidence of guilt. . . . Nor is there anything inherently repugnant to due process in requiring the doctor to choose between giving testimony at the disciplinary hearing, a course that

may help the criminal prosecutors, and keeping silent, a course that may lead to the loss of his license.

And in *Gabrilowitz v. Newman* (a student faced with giving self-incriminating evidence or losing an about-to-be awarded degree) at 104 the court stated:

There is no indication that the hearing board will consider the silence of an accused as either pointing to or being conclusive evidence of guilt. Appellee's testimony would be, therefore, entirely voluntary and subsequently admissible at the criminal case. Although the possibility of expulsion may make participation a wise choice, the hearing procedures do not place appellee "between the rock and the whirlpool." He can, if he wishes, stay out of the stream and watch the proceedings from dry land. But, if he does so, he forfeits any opportunity to control the direction of the current. Appellee must decide whether or not to testify at the hearing with the knowledge that, if he does, his statements may be used against him in the criminal case.

*See also Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *DeVita v. Sills,* 422 F.2d 1172 (3rd Cir. 1970); *Securities & Exchange Commission v. Gilbert,* 79 F.R.D. 683 (S.D.N.Y.1978); *United States v. White,* 589 F.2d 1283 (5th Cir. 1979); *Roberts v. Taylor,* 540 F.2d 540 (1st Cir. 1976).

█ The F.O.P.'s dilemma is indistinguishable from *Arthurs* or *Gabrilowitz.* In this case, as I view the law, it is clear that requiring an administrative hearing to go forward in the face of pending criminal charges arising out of the same conduct and where no severe direct sanctions will be imposed for asserting the Fifth Amendment, is constitutionally permissible.

claims is routinely made available to complainants as a matter of practice, although the consent judgment is silent on the issue of continuances based on this ground] . . . .. In the interest of fair play, the F.O.P. seeks to protect an accused Providence police officer from having to testify while a criminal investigation and/or charges are pending. At the

same time, it should not be forgotten that the F.O.P. is seeking to modify the Consent Judgment in such a fashion as to formally protect civilian complainants who are under investigation or against whom criminal charges are pending. Defendant's memorandum at 3, 5. The hearings are held before a selected officer above the rank of sergeant.

The plaintiff also contends that the defendant has not acted in a timely fashion in filing the present motion, citing Fed.R. Civ.P. 60(b). Having disposed of the motion on other grounds, I need not resolve this issue.

The defendant's motion to modify the consent judgment entered into between the plaintiffs and defendants on March 27, 1973 is hereby denied.

An order will be prepared accordingly.