**W.L. GORE & ASSOCIATES, INC. and Gore Enterprise Holdings, Inc., Plaintiffs–Appellees,**

**v.**

**C.R. BARD, INC., Defendant–Appellant.**

**No. 91–1305.**

United States Court of Appeals, Federal Circuit.

Oct. 14, 1992.

David H. Pfeffer, Morgan & Finnegan, New York City, argued for plaintiffs-appellees. With him on the brief were Michael A. Nicodema and Howard J. Susser. Also on the brief was John S. Campbell, W.L. Gore & Associates, Newark, N.J., of counsel.

Peter C. Schechter, Darby & Darby, P.C., New York City, argued for defendant-appellant. With him on the brief was Michael J. Sweedler.

Before NEWMAN, CLEVENGER, and RADER, Circuit Judges.

1. *W.L. Gore & Associates, Inc. v. C.R. Bard, Inc.,*

PAULINE NEWMAN, Circuit Judge.

C.R. Bard, Inc. appeals the order of the United States District Court for the District of New Jersey[1], declining to modify an injunction previously entered by consent, based on settlement between the parties. Bard urges that the law upon which the injunction was predicated has now been changed, and that it would be unfair to hold Bard to the original terms of the settlement. We affirm the district court's denial of the requested modification.

## BACKGROUND

In February, 1984 W.L. Gore & Associates and Gore Enterprise Holdings (collectively "Gore") sued Bard for infringement of United States Patent No. 4,187,390 entitled "Porous Products and Process Therefor", inventor Robert W. Gore. The patent expires in April, 1993. The Gore patent is directed to a porous polytetrafluoroethylene (PTFE) material that Gore sells under the GORE–TEX brand name. Gore has sold vascular prostheses (synthetic blood vessels) made of its PTFE material since 1975. The Bard products that were accused of infringement were vascular prostheses made of PTFE, which had been approved by the Food and Drug Administration based on Bard's representation that its products were "substantially equivalent" to those of Gore.

The parties settled the lawsuit. Bard agreed, *inter alia*, to be enjoined from "infringing or actively inducing infringement" of the Gore patent. Paragraph 4 of the order of Final Judgment and Injunction on Consent, entered by the district court on April 12, 1984, provides:

4. Bard, its officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, are hereby enjoined and restrained from infringing or actively inducing infringement of one or more of Claims 9, 12, 16, 35 and 36 of United States Letters Patent No. 4,187,390 including, without limi-

761 F.Supp. 376, 19 USPQ2d 1621 (D.N.J.1991).

tation, the manufacture and/or use and/or sale and/or the promotion of sale and/or use of products heretofore identified as "Bard PTFE Reinforced Expanded PTFE Vascular Prosthesis" or as "Bard Blood Access PTFE Vascular Prosthesis".

The consent judgment provides that the district court "shall retain jurisdiction over the parties and over the subject matter of this action for the purpose of insuring compliance with the injunction provided by paragraph 4 hereof."

On April 23, 1984 the Federal Circuit held in *Roche Products, Inc. v. Bolar Pharmaceutical Co.*, 733 F.2d 858, 221 USPQ 937 (Fed.Cir.), *cert. denied*, 469 U.S. 856, 105 S.Ct. 183, 83 L.Ed.2d 117 (1984), that since it was patent infringement to make, use, or sell a patented product, no exception pertained when the purpose of the activity was to develop information for use in obtaining Federal regulatory approval of a drug. This holding was overturned by act of Congress in September, 1984 with the addition of subsection 271(e):

> 35 U.S.C. § 271(e).
>
> (1) It shall not be an act of infringement to make, use, or sell a patented invention ... solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products....
>
> \* \* \* \* \* \*
>
> (3) In any action for patent infringement brought under this section, no injunctive or other relief may be granted which would prohibit the making, using, or selling of a patented invention under paragraph (1).

Interpreting § 271(e), the Supreme Court in *Eli Lilly and Co. v. Medtronic, Inc.*, 496 U.S. 661, 110 S.Ct. 2683, 110 L.Ed.2d 605, 15 USPQ2d 1121 (1990) held that the terminology "drugs" encompasses medical devices.

Following the *Eli Lilly* decision Bard sought, pursuant to Fed.R.Civ.P. 60(b),[2] modification of the settlement agreement to authorize Bard to engage in activity reasonably related to Federal regulatory approval of its new prostheses. Bard asked the district court to add the following text to paragraph 4 of the consent judgment:

> ... except that Bard may make, use, or sell articles which would otherwise infringe United States Letters Patent No. 4,187,390 so long as such making, using, or selling is solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use or sale of drugs or veterinary biological products, as permitted under 35 U.S.C. § 271(e)(1).

The district court denied the request, holding that Bard had not made a sufficient showing of extreme and unexpected hardship or other basis of modification of a voluntary settlement agreement.

## DISCUSSION

### A

The Supreme Court has "long recognized that '[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.'" *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981) (quoting *Baldwin v. Traveling Men's Association*, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931)). The consent order embodying the settlement between Gore and Bard is a final judgment; it is accompanied by finality as stark as an adjudication after full trial. *See Delaware Valley Citizens' Council v. Commissioner of Pennsylvania*, 674 F.2d 976, 981 (3d Cir.), *cert. denied*, 459 U.S. 905, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982).

**2. Fed.R.Civ.P. 60(b).** On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order or proceeding for the following reasons: ...

(5) ... it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment....

When litigation is ended by the deliberate choice of the parties, a movant's burden for modification of a consent order is particularly heavy, *United States Steel Corp. v. Fraternal Association of Steel Haulers*, 601 F.2d 1269, 1274 (3d Cir.1979), for "while consent decrees are judicial acts, they have often been recognized as having many of the attributes of a contract voluntarily undertaken." *Philadelphia Welfare Rights Organization v. Shapp*, 602 F.2d 1114, 1119–20 (3d Cir.1979), *cert. denied*, 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 660 (1980). As the Third Circuit remarked,[3] when parties have chosen to submit to a consent decree instead of seeking a more favorable judgment upon litigation, "their burden under Rule 60(b) is perhaps even more formidable than had they litigated and lost." *Id.* at 1120.

■ Still, modification of a consent order is not precluded in appropriately exceptional circumstances. *Delaware Valley Citizens Council v. Commissioner of Pennsylvania*, 755 F.2d 38, 45 (3d Cir.), *cert. denied*, 474 U.S. 819, 106 S.Ct. 67, 88 L.Ed.2d 54 (1985) (*Delaware Valley II*); *Mayberry v. Maroney*, 529 F.2d 332, 335 (3d Cir.1976). It must be shown that "absent such relief an extreme and unexpected hardship will result." *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir.1977) (*Mayberry II*). The equities presented by the facts of the particular case must be examined. *Delaware Valley II*, 755 F.2d at 45.

The court may modify an injunction when it is "satisfied that what it has been doing has been turned into an instrument of wrong." *United States v. Swift & Co.*, 286 U.S. 106, 114–15, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932). The Supreme Court has recognized that the policies of *res judicata* are not totally inviolate when the judgment includes an injunction of prospective effect, and must be balanced against the need, in "sound judicial discretion", to modify a continuing injunction when circumstances have sufficiently changed. *System Federation No. 91, Railway Employees Department v. Wright*, 364 U.S. 642, 647–48, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961). Lest the finality of judgments and the policy of ending litigation be unduly impeached, such modification requires not only that circumstances have changed, but that unexpected hardship and inequity have resulted.

■ For a judgment entered on consent, the asserted reasons for the requested modification must be evaluated in the context of the negotiated bargain between the parties at the time of the settlement, this bargain adding weight to the policies of *res judicata*. In *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968) the Court explained that although a decree may be changed in appropriate circumstances, "it may *not* be changed in the interests of the defendants if the purposes of the litigation as incorporated in the decree ... have not been fully achieved". *Id.* at 248, 88 S.Ct. at 1499. That a contract voluntarily made turns out to be less or more favorable to one of the parties is insufficient ground for judicial intervention.

■ Bard has directed our attention to cases in which a substantive change in the law occasioned modification of a continuing injunction. In all of these cases a decree involving a public or service institution had been affected by a change of law relating to the institution. Bard relies particularly on *System Federation No. 91 v. Wright*, *supra*. In *System Federation* the plaintiffs, who were not members of the railroad employees' union, had sued the railroad and the union for discriminating against non-union employees. By settlement in 1945, which was embodied in a consent decree of unlimited duration, the railroad and the union agreed not to discriminate against employees on the basis of their refusal to join the union. The settlement was in accord with the Railway Labor

---

**3.** In this procedural matter we look to the precedent of the Third Circuit, for the general question of application of Rule 60(b) to provide relief from judgment is not exclusive to the Federal Circuit. *See Ashland Oil, Inc. v. Delta Oil Products*, 806 F.2d 1031, 1033, 1 USPQ2d 1073, 1075 (Fed.Cir.1986) (reviewing disposition of motion under Rule 60(b)(5) in accordance with the law of the regional circuit).

Act then in effect, which forbade railroads from inducing or coercing employees either to join or not to join a union. In 1951 the Railway Labor Act was amended to allow a railroad to bargain with its employees to require union membership; that is, for a "union shop". The union sought judicial modification of the consent decree commensurate with the change of law. The Court agreed, holding that the decree had come into conflict with the changed statutory objective of allowing union shops. In so holding the Court observed that the injunction at issue affected interests beyond those of the immediate parties. 364 U.S. at 651, 81 S.Ct. at 373.

Other cases relied on by Bard include *Williams v. Butz*, 843 F.2d 1335 (11th Cir.), *cert. denied*, 488 U.S. 956, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988), wherein an intervening change in federal regulations directed the Farmers Home Administration to proceed differently than required by the consent decree; *Williams v. Atkins*, 786 F.2d 457 (1st Cir.1986), wherein an intervening change in law directed a state welfare agency to proceed in a different way than was required by the consent decree; and *Jordan v. School District of Erie, Pennsylvania*, 548 F.2d 117 (3d Cir.1977), wherein an intervening Supreme Court decision affected the procedures set in a consent decree concerning a school district's policy on suspending students.

For such "institutional reform" cases the Supreme Court has explained that a flexible judicial standard is appropriate with respect to modification of continuing consent decrees, "because such decrees 'reach beyond the parties involved directly in the suit and impact on the public's right to the sound and efficient operation of its institutions.'" *Rufo v. Inmates of Suffolk County Jail*, — U.S. —, 112 S.Ct. 748, 759, 116 L.Ed.2d 867 (1992) (quoting *Heath v. De Courcy*, 888 F.2d 1105, 1109 (6th Cir.1989)). Judge Friendly has remarked that the injunctive relief in these cases " 'are not so much peremptory commands to be obeyed in terms, as they are future-oriented plans designed to achieve broad public policy objectives in a complex, ongoing fact situation.'" *New York State*

*Ass'n for Retarded Children, Inc. v. Carey*, 706 F.2d 956, 970 n. 17 (2d Cir.), *cert. denied*, 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983) (quoting Abram Chayes, *The Supreme Court—1981 Term—Foreword: Public Law Litigation and the Burger Court*, 96 Harv.L.Rev. 4, 56 (1982)).

The institutional reform cases present considerations not found in consent decrees settling commercial disputes, see *Heath*, 888 F.2d at 1108–10, for commercial decrees affect only the parties to the particular suit, whereas institutional cases may impose action, or restrain action, in ways that transcend the persons involved in the suit and its settlement. In the latter situation the consent remedy "must be open to adaptation when unforeseen obstacles present themselves, to improvement when a better understanding of the problem emerges, and to accommodation of a wider constellation of interests than is presented in the adversarial setting of the courtroom." *Ass'n for Retarded Children*, 706 F.2d at 969. Commercial litigants, in contrast, have negotiated a voluntary contract that has simply been accepted by the court in termination of litigation.

Bard states that the intervening change of law in this case serves the public interest, and therefore should be implemented despite the private industry status of the parties to the agreement and consent judgment. We agree that the public purpose of an intervening change in law is a factor to be weighed, along with other aspects of the particular case, against the public and private interest in finality of judgments. This balance among all of the factors arising in a Rule 60(b) motion is committed to the sound discretion of the district court. *Delaware Valley II*, 755 F.2d at 41; *accord CTS Corp. v. Piher International Corp.*, 727 F.2d 1550, 1555, 221 USPQ 11, 14 (Fed. Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 151 (1984) (applying abuse of discretion standard of review to Rule 60(b)(6) ruling). Although an abuse of discretion may be shown when the district court committed, *inter alia*, a clear error of judgment, it is not sufficient that the

reviewing court could have reached a different result. *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806, 813 (3d Cir.1989). We have carefully considered the conclusions of the district court in light of this standard, with attention to the arguments made by both sides.

Bard states that it is at a disadvantage with respect to other competitors of Gore. Gore responds that both parties understood at the time of settlement that Bard would not engage in activities that were then considered to be patent infringement. Gore states that Bard could have negotiated, at the time of settlement, for regulatory approval testing rights, for such a bargain was not prohibited by law. Gore stresses this distinction from *System Federation*, for railroad and union could not have negotiated for and agreed to the result that was later sought from the court, since a union shop was illegal at the time of the settlement. We take note that unlike the injunctions of unlimited duration in *System Federation* and many of the institutional cases, the injunction in the case at bar will expire with the Gore patent in April 1993.

Gore points out that its agreement with Bard represented a compromise, and that the balance freely struck would be distorted by now changing one of the elements of the bargain. The district court so recognized, referring to the statement in *United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971) that "the parties each gave up something they might have won had they proceeded with the litigation". The district court discussed Bard's assertions of hardship, and weighed the asserted harm against the benefits to Bard in having settled the litigation with Gore: the saved litigation expense, the avoidance of a potentially large adverse judgment. The district court found that Bard is not suffering great financial hardship, having grown at a substantial rate since 1984. Discussing the equities, the court observed that Bard's 1982 Federal approval for its vascular prosthesis is still in effect despite the infringing nature of Bard's activities in obtaining that approval, and that Bard will be able to resume sale of that product immediately upon expiration of Gore's patent. Bard does not disagree, but states that its new products will be delayed. Gore states that if pre-market testing rights had been included, it would not have settled on the same terms, if at all.

Bard also argues that it is unnecessary to show hardship in order to modify a consent decree under Rule 60(b): that it suffices that there has been an intervening change of law, reflecting a change in congressional policy. We discern no support in precedent for that abstract position, which would lead to a pernicious instability of final judgments. We agree with the district court that each case must be decided on the facts appertaining to the parties before the court.

The district court concluded that even if this decree requires more of Bard than is now required by law, any ensuing inequity does not in this case warrant judicial intervention, the court stressing the extraordinary nature of reopening a final judgment. The district court observed that this was a negotiated settlement, involving a substantial reduction in the damages sought by Gore, and including various undertakings on both sides. The terms of the settlement were agreed upon without judicial intervention. The court stated that Bard should not now be able to change that part of the agreement that is adverse to it, while holding Gore to its part of the bargain. The court gave weight to the public policy of an "overriding interest in the finality and repose of judgments" on consent, *Mayberry II*, 558 F.2d at 1164.

We conclude that the district court's ruling, on the facts of this case, did not abuse the court's discretionary authority.

## B

■ Bard argues on this appeal that it does not really need modification of the consent judgment, but simply seeks to make clear that its proposed activities are not patent infringement. The district court did not discuss this proposition, and the parties dispute whether it was presented

for decision. Bard states that the subject was mentioned in its reply brief before the district court, and in "brief colloquy" at the hearing. That is insufficient to place on the appellate agenda an issue that was not presented to the district court for decision. We take note that the only relief requested in Bard's Rule 60(b) motion was modification of the consent injunction. Indeed, Bard in its appellate brief recognizes the "hypothetical" nature of this inquiry. To the extent that Bard now seeks a declaration of rights and consequences, this inquiry is not before us on appeal and we express no view as to its merits.

### C

Gore argues, as it did to the district court, that Bard's proposed application of 35 U.S.C. § 271(e)(1) to Gore's patent despite the settlement and consent judgment would be a taking of Gore's property without just compensation, as well as an interference with vested rights, contrary to the safeguards of the Constitution. In view of our affirmance of the district court's ruling on the grounds relied on by the district court, we do not reach the constitutional question.

### CONCLUSION

The denial of Bard's request that the injunction be modified is

AFFIRMED.

RADER, Circuit Judge, concurring.

### I.

This court, in its opinion, reaches a result in which I concur. The district court has wide discretion in modifying a consent decree under Fed.R.Civ.P. 60(b). *System Fed'n No. 91, Ry. Employees Dep't v. Wright*, 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961). The trial court's ruling, on the facts of this case, did not constitute an abuse of discretion. I write separately to explain that this court's attempt to limit strictly the Supreme Court's decision in *System Federation* is dicta.

Despite the broad discretion afforded trial courts under Rule 60(b), *CTS Corp. v. Piher Int'l Corp.*, 727 F.2d 1550, 1555, 221 USPQ 11, 14 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 151 (1984), an intervening change in law may warrant modification of a judicial decree. *Rufo v. Inmates of Suffolk County Jail*, — U.S. —, 112 S.Ct. 748, 762, 116 L.Ed.2d 867 (1992); *System Fed'n*, 364 U.S. at 648, 81 S.Ct. at 372. In *System Federation*, the Supreme Court ordered modification of a consent decree to accommodate a change in law. 364 U.S. at 653, 81 S.Ct. at 373–74.

In numerous cases, including *System Federation*, an intervening change in law justified modification of a continuing injunction. *Williams v. Butz*, 843 F.2d 1335 (11th Cir.), *cert. denied*, 488 U.S. 956, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988); *Williams v. Atkins*, 786 F.2d 457 (1st Cir. 1986); *Jordan v. School Dist. of Erie*, 548 F.2d 117 (3d Cir.1977). This court purports to distinguish away this extensive body of authority in one sentence: "In all of these cases a decree involving a public or service institution had been affected by a change of law relating to the institution."

This language suggests that modification of a consent decree involving a public or service institution is different than modifying a decree between C.R. Bard, Inc. and W.L. Gore, Inc. To the contrary, Bard and Gore both undoubtedly consider themselves "service institutions" in the same sense that the private entities in *System Federation* (a railroad and a union) are "service institutions." Thus, this court's attempt to set a different standard for "public or service institutions" does not distinguish *System Federation* nor define the class subject to the new standard.

This court seems nonetheless to suggest that private parties to settlements in patent cases may no longer rely on *System Federation* in a motion to modify under Rule 60(b). The court, however, provides no principled basis for distinguishing patent law from the corpus of American law governed by *System Federation*. Because this court cannot disregard Supreme Court

precedent, I must conclude that this court's attempt to distinguish *System Federation* is dicta.

## II.

This court only affirms the district court's denial of Bard's motion to modify its consent decree. Paragraph 4 of the consent decree merely enjoins Bard "from infringing or actively inducing infringement of one or more of [the claims]." Testing is no longer infringing conduct. 35 U.S.C. § 271(e) (1988). This court does not have before it a declaratory judgment action to determine whether Bard's testing procedures would constitute infringement. Consequently this court does not decide whether the consent decree bars Bard's testing.