**W.L. GORE & ASSOCIATES, INC. and Gore Enterprises Holdings, Inc., Plaintiffs,**

v.

**C.R. BARD, INC., Defendant.**

**Civ. No. 84–729.**

United States District Court, D. New Jersey.

April 9, 1991.

Ralph N. Del Deo, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., David H. Pfeffer, Michael A. Nicodema, Howard J. Suffer, Morgan and Finnegan, New York City, for plaintiffs.

Bartholomew A. Sheehan, Jr., Summit, N.J., Michael J. Sweedler, Peter C. Schechter, Darby & Darby, P.C., New York City, for defendant.

## OPINION

SAROKIN, District Judge.

Before the court is defendant's motion to modify a permanent injunction entered into with the consent of both parties.

### Introduction

A settlement of litigation involves an analysis by the parties which invariably takes into account the issues of fact and the existing state of the applicable law, and each party measures its settlement position and offers against its likelihood of success. In resolving the matter the parties compromise their respective demands and defenses and arrive at a negotiated agreement. The question presented by this matter is whether a settlement resulting in a consent judgment predicated upon the then state of the law should be modified, if the law upon which it was based is modified or abolished.

Although the cases which have dealt with this issue recognize the court's power to grant such modification, whether the decree is the result of consent or judicial determination, the considerations for the exercise of the court's discretion should not be the same for both. An injunction, which by its very nature has prospective application, is easily modified if the law upon which the judicial determination has been made no longer prevails. If the court prohibits conduct because Congress has prohibited it, the lifting of that statutory

prohibition, in most instances, should cause the court to lift its prohibition.

 However, when the parties have bargained for the prohibition, and the existing law is only part of the consideration for the bargain, then exercise of the court's discretion should be more limited, notwithstanding a change in the law.

Modification would be required if the new law *prohibited* what the old law and consent decree *allowed*. But modification is not necessarily required where the new law *allows* what the old law and the consent decree *prohibited*. The parties can impose limitations by agreement which exceed those imposed by the government, provided the limitations themselves are not illegal.

 The restrictions imposed upon the defendant in this matter were the result of the negotiations and in particular, a substantial reduction in plaintiffs' claims for damages. Defendant should not be able to modify that part of the bargain which is detrimental to its interests, but hold plaintiffs to their surrender of rights and claims. Plaintiffs could have bargained for and received the restriction which defendant now seeks to strike whether the law so provided or not. Plaintiffs should not be required to surrender the benefit of its bargain because of a change in the law, no more than plaintiffs would be able to claim additional monies of defendant if it discovered that its damages were far greater than it had anticipated or knew at the time of the settlement. So long as continuation of the challenged provision is neither illegal nor against public policy, the agreement of the parties should be upheld notwithstanding the subsequent change in the law—absent extreme hardship or prejudice not reasonably anticipated at the time of the agreement. No such hardship or prejudice has been presented here, and thus the motion to modify the decree shall be denied for the reasons herein expressed.

1. Bard notes that Gore's patent has been held invalid in *W.L. Gore & Assoc. v. International Medical Prosthetics Research Assoc.*, 16 U.S.P. Q.2d 1241, 1990 WL 180490 (D.Ariz.1990).

### Factual Background

In 1980 plaintiffs W.L. Gore & Associates, Inc. and Gore Enterprise Holdings (collectively "Gore") received a patent, Patent No. 4,187,390, for "Porous Products and Process Therefor." [1] In 1982, defendant C.R. Bard, Inc. ("Bard") received FDA approval to market its medical device known as a vascular prosthesis made from a form of plastic called polytetrafluoroethylene (PTFE). Gore sells a similar product under its GORE–TEX brand. In February 1984, Gore sued defendant for infringement of the Gore patent.

After discovery, the parties settled the suit. Bard consented to pay Gore $600,000 and to entry of a Final Judgment and Injunction on Consent, dated April 12, 1984. In the injunction, Bard consented to both the validity of the Gore patent and infringement thereof by Bard's manufacture, use, and sale of expanded PTFE vascular grafts. Defendant's Schechter Declaration, Exhibit B at ¶ 2, 3. The injunction provided that Bard is enjoined from "infringing or actively inducing infringement" of plaintiffs' patent, "including, without limitation, the manufacture and/or use and/or sale and/or the promotion of sale and/or use of products heretofore identified as 'Bard PTFE Reinforced Expanded PTFE Vascular Prosthesis' or as 'Bard Blood Access PTFE Vascular Prosthesis.' " *Id.* at ¶ 4. Gore's patent expires in April, 1993. Plaintiffs' Declaration of James R. Phelps at ¶ 2.

In 1984, at the time the parties entered into the consent injunction, it was considered patent infringement to make, use or sell a patented product for the limited purpose of testing and investigation related to FDA approval, in anticipation of the expiration of a patent. *Roche Products, Inc. v. Bolar Pharmaceutical Co.*, 733 F.2d 858 (Fed.Cir.), *cert. den.*, 469 U.S. 856, 105 S.Ct. 183, 83 L.Ed.2d 117 (1984), interpreting 35 U.S.C. § 271(a). In response to

However, Bard does not argue, and this court does not conclude, that the Arizona court's decision is relevant to the instant dispute.

the *Roche* case, on September 24, 1984, Congress amended the statute at issue:

(e)(1) It shall not be an act of infringement to make, use, or sell a patented invention ... solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products.

(e)(3) In any action for patent infringement brought under this section, no injunctive or other relief may be granted which would prohibit the making, using, or selling of a patented invention under paragraph (1).

Added to Title 35, U.S.C., by The Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98–417, 98 Stat. 1585, 1603. In 1990 the Supreme Court ruled that this statutory provision applies not only to medical devices, but also to drugs. *Eli Lilly and Co. v. Medtronic, Inc.,* —— U.S. ——, 110 S.Ct. 2683, 2689, 110 L.Ed.2d 605 (1990). The Court noted that because, under the pre-existing law, it would be a violation of the patent for a competitor to do the necessary work to obtain FDA approval before the patent expired, the patentee's effective monopoly over the product was extended beyond the expiration date of the patent.

On the basis of this change in the statute and the Court's interpretation of it, Bard now seeks to modify the remaining prospective application of the consent injunction in this case. Plaintiffs oppose defendant's motion to modify, arguing that Bard has not made a sufficient showing of "extreme and unexpected hardship" to warrant a modification of the consent decree, and also that application of the statutory provision in this case would violate Gore's constitutional rights.

### Legal Discussion

As the Supreme Court wrote in *System Federation No. 91, Railway Employees Dep't v. Wright,* 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961), "the *power* of the District Court to modify [a consent] decree is not in question." *Id.* at 646, 81 S.Ct. at 371 (citations omitted) (emphasis in original). The decision of whether to modify the decree lies within the court's discretion. *Id.* at 647–8, 81 S.Ct. at 371–2. The Court in *System Federation* continued:

There is also no dispute but that a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen.

*Id.* at 647, 81 S.Ct. at 371. This rule of law applies equally to a case involving a consent decree as to an injunction arising from litigation. *Id.* at 650–1, 81 S.Ct. at 372–73, *citing U.S. v. Swift & Co.,* 286 U.S. 106, 114–5, 52 S.Ct. 460, 462–3, 76 L.Ed. 999 (1932). The question before the court is, then, whether the changed circumstances present in the instant dispute warrant a modification of the parties' consent injunction.

### A. Changed Circumstances

Defendant argues that the statutory amendment and subsequent caselaw justify modifying the consent injunction in this case. The court disagrees.

While in *System Federation* the change that the Court recognized as requiring a modification of the consent injunction was a statutory one, the situation in that case was different from the one in the case at bar. The dispute in *System Federation* involved the Railway Labor Act. In 1945, when the Act prohibited union-shop agreements between railroads and labor unions, nonunion employees of a railroad brought a suit against the railroad and certain unions of its employees. The suit resulted in a consent decree forbidding the railroad from discriminating against nonunion employees because of their refusal to join unions. After the Act was amended in 1951 to permit union-shop agreements between railroads and labor unions, the unions moved to have the decree modified so as not to prohibit the defendants from entering into such agreements. The District Court denied the motion, and the Supreme Court reversed, concluding that the Amendment to the Act legalized union shop agreements which,

when the decree was entered into by the parties, were a statutorily prohibited form of discrimination. Therefore, it was improvident for the district court to continue to effect the provision of the decree which prohibited such agreements. The Court stated, "[i]n a case like this the District Court's authority to adopt a consent decree comes only from the statute which the decree is intended to enforce.... [The court must] be free to modify the terms of a consent decree when a change in law brings those terms in conflict with statutory objectives." *Id.* at 651, 81 S.Ct. at 373.[2]

In contrast, in the instant case the consent injunction resulted from negotiations which included payment by Bard to Gore of $600,000. Gore argues that had Bard "not undertak[en] to stop infringing immediately and further undertak[en] to stay out of the infringing market until the patent expired, Gore would not have been willing to settle and would have insisted on attempting to recover damages of many millions of dollars before trebling under 35 U.S.C. § 285, as well as recovering attorney fees pursuant to 35 U.S.C. § 285." Plaintiffs' Affidavit of John S. Campbell at ¶ 5. The consent injunction in the case at bar was not, then, based only on the underlying statutory structure, but on a bargain struck between the two parties. Defendant cannot now free itself of the terms of that agreement.[3]

The Court in *System Federation* relied on an earlier Supreme Court case in which, as in *System Federation*, a decree was modified because the legal basis of the decree was changed. The case of *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1855), involved an earlier decree by the Court ordering the removal of a bridge across the Ohio River that obstructed navigation in contravention of an Act of Congress. A later Act declared the bridge to be lawful, and the Court dissolved the injunction. There is no indication that the original injunction in that case was part of a larger negotiation between the parties.

Another early precedent relied upon by the Court in *System Federation*, however, supports plaintiffs' argument and this court's ruling. In *Swift*, 286 U.S. at 114, 52 S.Ct. at 462, the lower court modified a consent decree which enjoined defendants from maintaining a monopoly, because of changed conditions in the food industry. The Supreme Court reversed, concluding that the changes were not so great as to erase the dangers of abusive monopoly against which the original injunction was designed to protect. The Court further stated that defendants had, "wisely or unwisely," submitted to the "restraints [set forth in the consent injunction] upon the exercise of powers that would normally be theirs.... They chose to renounce what they might otherwise have claimed, and the decree of a court confirmed the renunciation and placed it beyond recall." *Id.* at 110, 52 S.Ct. at 460–1.[4]

In ruling as it does, the court recognizes a distinction between consent decrees that reflect an agreement negotiated by

---

**2.** While the Third Circuit, in *Mayberry v. Maroney*, 558 F.2d 1159, 1164 (3d Cir.1977), wrote that "Rule 60(b) does not contemplate relief based merely upon precedential evolution," *System Federation* establishes that a clear change in the law may warrant a modification of a judicial decree.

**3.** The lower court in *System Federation* found, consistent with plaintiffs' argument, that "the parties had bargained, free of the requirements of the Act, for an injunction serving their own interests." 364 U.S. at 652, 81 S.Ct. at 373. However, the Supreme Court disagreed, concluding that:

[The] provision of the injunction prohibiting a union shop agreement as being unlawful *per se* ... was well enough under the earlier Railway Labor Act, but to continue it after the 1951 amendment would be to render protection in no way authorized by the needs of safeguarding statutory rights at the expense of a privilege denied and deniable to no other union.

*Id.* at 648, 81 S.Ct. at 371–2. The injunction in the case at bar, in contrast, was based not only on statutory rights but on a negotiated settlement between the parties.

**4.** The Court in *Swift* also found that the "ancient peril" of abuses in the food industry had not been eradicated. *Id.* at 118, 52 S.Ct. at 463–4.

the parties, and decrees ordered by the court. As the Supreme Court stated in *U.S. v. Armour & Co.*, 402 U.S. 673, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971):

> Consent decrees are entered into by the parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each gave up something they might have won had they proceeded with the litigation. Thus the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve.

*Id.* at 681–2, 91 S.Ct. at 1757 (emphasis in original).[5] The Court in *Armour* used this reasoning to establish that "a consent decree must be discerned within its four corners, and not by reference to what satisfies the purposes of one of the parties to it." *Id.* at 682, 91 S.Ct. at 1757. This reasoning applies equally well in the instant context, to establish that a consent decree that was "entered into ... after careful negotiation" should not be modified on the basis of a statutory change. *Id.* As the Third Circuit has held,

> The standard for reopening a consent decree is a strict one.... *Philadelphia Welfare Rights Org. v. Schapp*, 602 F.2d 1114, 1119 (3d Cir.1979). As with all final judgments, the parties have a strong interest in the finality of the decision; in addition, when the plaintiffs have made "a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment their burden [under

Rule 60(b) ] is perhaps even more formidable than had they litigated and lost." *Id.* at 1120.

*Fox v. U.S. Dep't of Housing and Urban Development*, 680 F.2d 315, 322 (3d Cir. 1982). A consent decree may well require of a party more than is required by law; a consent decree could also fix greater limits on a party than are set by the law. In either instance, it would be unfair for a court to modify a consent decree based on a negotiated compromise.

### B. *Equity*

The defendant further argues that the principles of equity call for a modification of the instant injunction. Defendant cites to Fed.R.Civ.P. 60(b), under which the court may relieve a party of a final judgment where "it is no longer equitable that the judgment should have prospective application," *id.* at 60(b)(5), or where "any other reason justif[ies] relief from the operation of the judgment," *id.* at 60(b)(6).

Reopening a consent decree under Rule 60(b) is "extraordinary" relief and "may be granted only upon a showing of 'exceptional circumstances.'" *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir.1977). The Supreme Court in *System Federation* wrote:

> Firmness and stability must no doubt be attributed to continuing injunctive relief based on adjudicated facts and law, and neither the plaintiff nor the court should be subjected to the unnecessary burden of re-establishing what has once been decided. Nevertheless the court cannot be required to disregard significant changes in law or facts if it is 'satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong.' A balance must thus be struck between the policies of *res judicata* and the right of the court to apply modified measures to changed circumstances.

---

5. *Compare System Federation*, 364 U.S. at 651, 81 S.Ct. at 373 ("It was the Railway Labor Act, and only incidentally the parties, that the District Court served in entering the consent decree now before us."). In the instant case, in contrast with *System Federation*, the consent decree reflected a negotiated agreement between the parties, and was not solely the result of the requirements of the Patent Act.

364 U.S. at 647–8, 81 S.Ct. at 371 (citation omitted).

The court concludes that the equities lie in favor of plaintiffs. The parties struck a bargain in 1984, the terms of which cannot in fairness be altered by the court today. The court cannot and should not speculate as to what each party may have achieved through litigation, or what each party may have bargained for had it known that the law would be changed.

Nor will defendant be unduly burdened, given the peculiarities of this case. In *Swift*, 286 U.S. at 119, 52 S.Ct. at 464, the Court held that the defendants were

> not suffering hardship so extreme and unexpected as to justify [the court] in saying that they are the victims of oppression. Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.[6]

Bard argues that it alone, among its competitors, is now unable to test its new graft; however, Bard in fact has an advantage over its competitors due to the testing it already accomplished and the FDA approval it received for its graft in 1982.[7]

Finally, the parties debate Bard's financial condition and the importance to Bard of access to the market for vascular grafts. Plaintiffs claim that Bard has done well since 1984, showing a 90% growth rate. Plaintiffs' Exhibits 1 and 2. Bard argues that if the consent injunction is not modified, Bard will be at a disadvantage in the market well after Gore's patent expires, and will lose business, business opportunity, and market share. Defendant's Reply Brief at 10. Despite its claim, defendant has failed to convince the court that it will suffer great harm absent a modification of the consent injunction. Moreover, while Bard argues that by 1992, 51% of the relevant public are forecast to prefer PTFE over DACRON vascular grafts, *id.* at 11, citing Plaintiffs' Exh. 3, the proposed modification that would allow Bard to test in advance of the expiration of Gore's patent would not diminish this forecast of Gore's success.

Gore further argues that a modification of the consent injunction would be unconstitutional as applied to Gore. In light of the court's conclusion that a modification of the consent decree would be inappropriate, the court need not reach this issue.

### Conclusion

For the foregoing reasons, defendant's motion to modify the consent injunction is denied.

---

6. This requirement of showing severe hardship may be distinguished in that in *Swift* and in the other cases that have required such a showing the change invoked to justify modifying an injunction involved not a change in law, as the instant case presents, but a change in conditions. In particular, in the context of institutional reform, courts have required a showing of severe harm. *See e.g., Mayberry*, 558 F.2d at 1163–64. Even if such a strong showing is not required, however, defendant has not shown sufficient harm to satisfy the court that the balance of equities lies in its favor.

7. The parties also dispute how long it will take defendant to test its new graft and obtain FDA approval. Plaintiffs argue that the kind of testing required could be accomplished in a matter of days, *see* Plaintiffs' Biggerstaff Declaration at ¶ 7, and agency approval could be obtained in less than six months, *see* Plaintiffs' Phelps Declaration at ¶ 3. According to defendant, the entire process of gaining FDA approval—from testing and submitting a 510K Premarket Notification to the completion of the FDA review process—can be expected to take 14 to 18 months. Defendant's Declaration of Annette Fagnant.