**Donald C. WHITMIRE, Plaintiff,**

v.

**CORBEL & CO., Defendant.**

**No. 93 Civ. 8031(JES).**

United States District Court,
S.D. New York.

Sept. 24, 1997.

Ferber Greilsheimer Chan & Essner, New York City (Robert N. Chan, of counsel), for Plaintiff.

Meyers Tersigni Feldman & Gray, New York City (Richard N. Gray, of counsel), for Defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to 28 U.S.C. § 2201, plaintiff Donald C. Whitmire ("Whitmire") brings the instant action against defendant Corbel & Co. ("Corbel"), seeking a declaratory judgment that certain of plaintiff's business activities do not violate the injunctive provisions of a consent judgment previously entered into between the parties. In the alternative, Whitmire seeks a modification of the consent judgment pursuant to Federal Rule of Civil Procedure 60 to permit him to operate his business. For the reasons that follow, the Court denies Whitmire's requests for a declaratory judgment and for modification of the consent judgment.

## BACKGROUND

Corbel is a Florida corporation with its principal office located in Jacksonville, Florida. See Joint Pre–Trial Order ("P.T.O.") ¶ 2 at 2. Corbel's business is preparing customized pension and related documents for attorneys, pension consultants, actuaries and others. Id. ¶ 3 at 2. Corbel offers its services through the mail or on-line. Id. In addition, Corbel also sells computer software to its clients, thus allowing them to prepare their own pension-related documents in-house. Id.

From approximately March 1981 through August 1983, Corbel employed Whitmire, an attorney, as its general counsel. See P.T.O. ¶ 4 at 3. Whitmire's duties included consulting with Corbel's customers on technical issues, drafting particularized pension plans, and keeping Corbel's forms current with respect to changing tax and pension laws. See Transcript of Trial Record dated September 7, 11, 1995 ("Tr.") at 3–4. On August 28, 1981, Whitmire entered into an employment agreement with Corbel (the "Agreement"). See 1984 Complaint ("1984 Compl.") ¶ 14 at 4. The Agreement prohibited Whitmire from disclosing Corbel's trade secrets and included a covenant against post-employment competition.[1] Id. ¶ 16 at 4–6.

Less than one year after he left Corbel's employ in August 1983, Whitmire joined Electronic Legal Publishers, Inc. ("ELP"), a newly formed corporation in New York that prepared and sold computer-generated pension plans and related documents. See Tr. at 3.

In June 1984, Corbel filed suit in this Court against Whitmire and others, asserting claims of misappropriation of proprietary and confidential information, unfair competition, unfair trade practices, copyright infringement and breach of the secrecy and noncompetition provisions in the Agreement arising out of the business activities of ELP. See *Corbel & Co. v. Donald C. Whitmire, et*

---

1. Whitmire's employment agreement provided, in relevant part:

(4) SECRECY
Employee [Whitmire] during the term of employment under this Agreement will have access to, and become familiar with, various trade secrets consisting of, amongst other things, clients' names, records, processes, methods of doing business, computer software and programming, compilations of information and other matters owned or possessed by the Employer [Corbel] which are regularly used in the operation and conduct of the business of Employer. The Employee shall not disclose any of the aforesaid trade secrets, directly or indirectly, nor use them in any way, either during the term of the Agreement or at any time thereafter, except as required in the course of, and within the scope of, Employee's employment.
(5) COVENANT AGAINST CONFLICTING EMPLOYMENT
During the time of Employee's employment by Employer and for a period of two (2) years after termination of Employee's employment with Employer, and irrespective of the reason for such termination, Employee shall not, directly or indirectly, within the existing marketing area of the Employer, which is the continental United States of America, Alaska, Hawaii, Puerto Rico, the Virgin Islands and Canada, render services on behalf of herself [sic] or any person, organization or entity which is engaged in or about to become engaged in research on, development of, or marketing or selling of any "know-how", process, materials, publications or services in existence or under development which resemble or compete with any process, materials, publications or services presently or during the term of Employee's employment hereunder that are published or sold by the Employer.... [N]othing herein shall be construed as prohibiting ... [e]mployee being engaged in or being a member of a firm engaged in the private practice of law, PROVIDED HOWEVER, that Employee shall not use any of the trade secrets set forth herein in the performance of his said practice of law.
1984 Compl. ¶ 16 at 4–6 (emphasis in original).

*al.,* No. 84–8131, slip op. (S.D.N.Y. June 10, 1985). On June 10, 1985, the parties entered into a Stipulation of Settlement and Judgment (the "1984 Judgment") which, *inter alia,* prohibited Whitmire as a principal, employee or in any other capacity, from engaging in any business in competition with Corbel that furnishes computer-generated pension documents to attorneys, pension professionals and/or actuaries.[2] *See* 1993 Complaint ("1993 Compl."), Exh. A (1984 Judgment) at 2; Tr. at 103–105.

The 1984 Judgment specifically delineated the following activities which are deemed not to be in competition with Corbel:

(a)(i) engaging in the private practice of law for any individual or entity not engaged in a Business in competition with Corbel;

(a)(ii) engaging in the preparation of Documents for pension consultants, actuaries or insurance companies not engaged in a Business in competition with Corbel or the rendering of pension administration and actuarial services;

(a)(iii) engaging in the preparation of computer programs and providing computer consulting services for any individual or entity not engaged in a Business in competition with Corbel.

*See* 1993 Compl. Exh. A (1984 Judgment) at 2; Tr. at 88–89. In addition, the judgment provides that Corbel's computer systems, systems design, customer information, and cost and price information are confidential, proprietary information and trade secrets. *See* 1993 Compl. Exh. A (1984 Judgment) at 3; P.T.O. ¶ 1 at 9.

From approximately June 1985 through May 1993, Whitmire was exclusively engaged in the private practice of law, preparing pension and pension-related documents for his clients on a word processor. *See* Tr. at 9–12. In May 1993, Whitmire became President and sole shareholder of AccuDraft, Ltd., a New York corporation.[3] *See* Tr. at 12. Whitmire, for AccuDraft, purchases commercially available document assembly software programs, modifies the software, and sells it to AccuDraft's clients, which include attorneys, pension consultants, actuaries and others. *Id.* These clients are then able to prepare in-house qualified pension and profit sharing plans for their own customers using AccuDraft's modified software. *See* 1993 Compl. ¶ 11 at 15. For those clients that do not wish to prepare their own documents, AccuDraft provides computer-generated pension plans and pension-related documents prepared on the basis of checklists provided by AccuDraft and completed by the client. *See* Deft. Trial Exh. H at 64–66; Deft. Trial Exh. C.

On November 22, 1993, after receiving notice from Corbel that it believed his business was violative of the 1984 Judgment, Whitmire filed the instant action. Whitmire seeks a declaratory judgment that his activities on behalf of AccuDraft, Ltd. and in his capacity as a sole proprietor d/b/a "AccuDraft," do not violate the terms of the 1984 Judgment. *See* 1993 Compl. at ¶ 13 at 5–6. Whitmire argues that his activities, whether in the corporate form or as a sole proprietor, are specifically permitted under subparagraphs (a)(ii) and (a)(iii) of the 1984 Judgment, *see supra* p. 292, since none of AccuDraft's clients are competitors of Corbel and the 1984 Judgment only prohibits Whitmire from selling software to people who are in competition with Corbel. *See* 1993 Compl.

---

**2.** The 1984 Judgment permanently enjoins Whitmire from, *inter alia,*

engaging in any business or undertaking furnishing manuals and documents generated by computer, including qualified retirement and pension plans, wills, trusts, insurance policies, corporate organizational documents, (articles of incorporation, by-laws and minutes), estate and probate forms, health and welfare plans, bankruptcy forms, real estate forms, family law forms and civil litigation forms (the "Documents"), whether as a service bureau, on-line, or in-house at the client's premises, to its customers, who consist of attorneys, pension professionals, actuaries, insurance companies, banks and other non-end users (the "Business"), whether as a principal or employee or in any other capacity. . . .

1993 Complaint ("1993 Compl."), Exh. A (1984 Judgment) at 2.

**3.** Since February 16, 1995, Whitmire has conducted business as a single proprietor doing business ("d/b/a") under the name "AccuDraft." *See* P.T.O. ¶ 3. Whitmire claims AccuDraft, Ltd. has been dormant since that date. *Id.* ¶ 4.

¶ 13 at 5–6; P.T.O. ¶ 12 at 6. Further, Whitmire argues that while he has simply marketed and sold software, the 1984 Judgment only prohibits him from furnishing "manuals and documents generated by computer." *See supra* note 2; 1993 Compl. ¶ 13 at 5–6. In addition, Whitmire claims that he has not used any confidential or proprietary information gained from his employment at Corbel. *See* 1993 Compl. ¶ 17 at 7.

Alternatively, Whitmire argues that even if his activities could be considered violative of the 1984 Judgment, the passage of time and changes in law and technology require modification of the 1984 Judgment. *See* 1993 Compl. ¶ 17. Whitmire contends that the pension documents used by Corbel in 1983 are obsolete, thus making any secret information he may have known in 1983 of no value today. *Id.*

## DISCUSSION

### I. Violation of the 1984 Judgment

 Consent judgments are agreements between parties to litigation and, therefore, should be construed as contracts. *See United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236–37, 95 S.Ct. 926, 934–35, 43 L.Ed.2d 148 (1975); *see also United States v. Int'l Bhd. of Teamsters,* 998 F.2d 1101, 1106 (2d Cir.1993); *S.E.C. v. Levine,* 881 F.2d 1165, 1178 (2d Cir.1989). Since a consent judgment is generally entered into after careful negotiation has produced agreement upon its precise terms, *see United States v. Armour & Co.,* 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971), the Court should interpret a consent judgment so as to give effect to what the parties agreed. *See Levine,* 881 F.2d at 1179. Therefore, the scope of a consent judgment "must be discerned within its four corners and not by reference to what might satisfy the purposes of one of the parties to it." *Armour,* 402 U.S. at 682, 91 S.Ct. at 1757. However, the Court may consider normal aids to construction, such as the circumstances surrounding the formation of the consent judgment, as if it was construing a contract. *See ITT,* 420 U.S. at 238, 95 S.Ct. at 935; *see also Teamsters,* 998 F.2d at 1106.

 Whitmire admits that AccuDraft purchases software programs and modifies them to permit its clients, which include attorneys, pension consultants, and actuaries, to assemble qualified pension and profit sharing plans in-house for their own customers. *See* Tr. at 10–11; 1993 Compl. ¶ 11 at 5. Furthermore, Whitmire admitted during trial that AccuDraft is in competition with Corbel, that it targets the same customers, provides the same services, and provides the same pension document packages as Corbel. *See* Tr. at 55–56. Clearly, Whitmire is engaging in a business which ultimately furnishes "documents generated by computer, including qualified retirement and pension plans ... [to] attorneys, pension professionals, [and] actuaries" in violation of the 1984 Judgment. *See supra* note 2. Merely because Whitmire furnishes the modified software that creates the pension forms, and not the actual forms themselves, does not require a different result. Whitmire himself is competing with Corbel and providing its customers with pension-related "manuals and documents generated by computer." *Id.* The Court therefore rejects Whitmire's hypertechnical suggestion that a literal reading of the terms of the 1984 Judgment does not preclude him from competing with Corbel himself. The 1984 Judgment clearly prohibits Whitmire from engaging in the same business activities that Corbel does, "whether as a principal or employee or in any other capacity." *Id.* To give the 1984 Judgment any other interpretation would negate the very purpose of that agreement.

Further, Whitmire's specious argument that AccuDraft is no longer a corporation but is, instead, a sole proprietorship d/b/a "AccuDraft" which does not violate the literal terms of the 1984 Judgment must also be rejected. *See* P.T.O. ¶ 8 at 5. A "d/b/a" is still an entity, even if it is not a separate legal person, and AccuDraft is clearly "a Business in competition with Corbel." *See supra* p. 292. Moreover, the 1984 Judgment specifically enjoins Whitmire from competing as a "principal or employee or in any other capacity." *See supra* note 2. Therefore, the Court finds that Whitmire, through the corporate form of AccuDraft, Ltd. and

later as a sole proprietor d/b/a "AccuDraft," has violated the terms of the 1984 Judgment.

## II. Modification of the 1984 Judgment

 Likewise, the Court rejects Whitmire's alternate argument that the 1984 Judgment should be modified. Although the Court has the power to modify the terms of an injunction as a final consent judgment, *see United States v. Swift & Co.*, 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932); *New York State Assoc. for Retarded Children v. Carey*, 706 F.2d 956, 967 (2d Cir. 1983), the general standard for modification applies only if changed circumstances have turned the consent judgment into an instrument of wrong. *See Swift*, 286 U.S. at 114–15, 52 S.Ct. at 462–63 (nothing less than clear showing of grievous wrong evoked by new and unforeseen conditions should lead a court to change what was decreed after years of litigation with the consent of all concerned).[4] Where, as here, a commercial consent judgment is at issue, this tougher standard is warranted because the parties negotiated a voluntary contract which was accepted by this Court as a fair compromise of a litigated action affecting only the parties to the particular suit. *See W.L. Gore & Assoc., Inc. v. C.R. Bard, Inc.*, 977 F.2d 558, 562 (Fed.Cir. 1992).

 The Court further finds that there has been no significant change in circumstances to warrant a revision of the decree, *see Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 383, 112 S.Ct. 748, 759, 116 L.Ed.2d 867 (1992); *Still's Pharmacy, Inc. v. Cuomo*, 981 F.2d 632, 637 (2d Cir. 1992), because Whitmire has failed to establish either a significant change in factual conditions or in the law. *See Rufo*, 502 U.S. at 384, 112 S.Ct. at 760. Further, Whitmire has failed to prove that compliance with the 1984 Judgment has become substantially more onerous, that the decree is unworkable due to unforeseen obstacles, or that enforce-

ment without modification would be detrimental to public interest. *Id.* This is especially true since Whitmire cannot colorably argue that the facts of this action were unanticipated at the time the consent judgment was entered. *Id.* at 385, 112 S.Ct. at 760.

Whitmire freely consented to the 1984 Judgment with full knowledge of the changes which could occur in the computer industry. Similarly, changes in pension and tax laws are frequent and should also have been anticipated. This is especially true since the consent judgment was willingly embraced by Whitmire as a vehicle to avoid an adverse result in a case that was difficult to defend and was accepted, at least in part, to avoid putting on a defense case and being subject to cross-examination. Moreover, the Court fully expounded on the anticompetitive nature of the settlement reached and accepted it only because both sides urged the Court to do so. *See* Transcript of Trial Record dated June 10, 1985 ("1985 Tr.") at 2, 4, 10–13.

## CONCLUSION

For the reasons set forth above, Whitmire's requests for a declaratory judgment and for modification of the 1984 Judgment are denied. The Clerk of Court shall enter judgment accordingly.

It is **SO ORDERED.**

---

4. Although the United States Supreme Court has established a more flexible modification standard for cases involving institutional reform, *see United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968), which the United States Court of Appeals for the Second Circuit has applied to large private decrees, *see Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity*, 13 F.3d 33 (2d Cir.1993) (affirmative action injunction seeking to reach 25% minority employment in newspaper industry lifted when goal achieved), for the reasons set forth above that standard does not apply to the action before the Court.