**Lucious WILLIAMS, Jr., et al.,
Plaintiffs–Appellees,**

v.

**Earl BUTZ, et al.,
Defendants–Appellants.**

**No. 87–8094.**

United States Court of Appeals,
Eleventh Circuit.

May 3, 1988.

**1336**

Kenneth C. Etheridge, Asst. U.S. Atty., Savannah, Ga., Jeffrey Clair, Alfred Mollin, Robert S. Greenspan, Dept. of Justice, Washington, D.C., for defendants-appellants.

Kay Y. Young, Georgia Legal Services Program, Atlanta, Ga., for plaintiffs-appellees.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and HAND *, Chief District Judge.

---

\* Honorable William Brevard Hand, Chief U.S. District Judge for the Southern District of Ala-

RONEY, Chief Judge:

The Farmers Home Administration (FmHA) appeals the denial of its motion to modify a consent decree which required it to use only judicial proceedings to foreclose mortgages on homes purchased under the Rural Housing loan program of Section 502(a), Title V of the Housing Act of 1949, 42 U.S.C.A. § 1472 *et seq.* (1980) (the Act). In view of changes in the agency's regulations, which it contends corrected the due process default which led to the consent decree, the agency sought a court ordered modification to permit foreclosure proceedings under the new regulations. Without examining the new regulations, the district court denied relief on the ground that the parties to the consent decree had agreed that modification would be appropriate only in the event that the consent decree was rendered illegal by subsequent court decisions. The court held that the FmHA neither submitted evidence that the decree violated constitutional, statutory or decisional law, which would render it invalid, nor showed "the kind of extreme, unexpected oppression and hardship which would justify modification of the Court's decree." Because the district court applied the wrong legal principles in refusing to review the proposed modification, we vacate and remand.

This is the latest case in a series that have challenged FmHA foreclosure procedures. *See Curry v. Block,* 738 F.2d 1556 (11th Cir.1984); *Johnson v. U.S. Dept. of Agriculture,* 734 F.2d 774 (11th Cir.1984). In 1977, FmHA entered into a consent decree with a class of Georgia residents, represented by Lucious Williams, Jr., who have purchased or will purchase homes under the Act and whose mortgages are or will be held by FmHA. The decree provides that when "foreclosure is still recommended by the United States, it will be processed judicially, and each class member will have the opportunity to raise any legal or equitable defense, including the affirma-

bama, sitting by designation.

tive defense of their claim to moratorium or interest credit." The decree also requires that borrowers be made aware of the availability of relief such as moratorium or interest credit at pre-loan interviews, loan closings and after a missed payment. The agency consented to be restricted to judicial foreclosure proceedings after the borrowers complained that nonjudicial methods authorized under Georgia law violated their right to procedural due process.

Congress has since amended the Act, requiring the FmHA to issue regulations giving Section 502 borrowers a right to notice and an impartial administrative hearing before foreclosure. 42 U.S.C.A. § 1480(g). The regulations were promulgated in 1978, and amended several times, most recently in 1985. The 1978 regulations were challenged by a class of Alabama citizens.

While not deciding the validity of the regulations, this Court in *Johnson v. U.S. Dept. of Agriculture*, 734 F.2d 774 (11th Cir.1984), ordered a preliminary injunction requiring only judicial foreclosures until the challenge to nonjudicial foreclosures was decided. There was never a judicial determination concerning the validity of nonjudicial foreclosures under the amended regulations in *Johnson*, because that case was subsequently settled by a consent decree permitting the FmHA to "use nonjudicial foreclosure in Alabama for all Rural Housing borrowers whose accounts are accelerated on or after July 8, 1985."

The Court in *Johnson* questioned why the FmHA had not requested modification of the *Williams* decree in light of the regulatory changes that had occurred since the entry of that decree. In September 1986, following the conclusion of the *Johnson* litigation and the promulgation of the revisions to the FmHA's appeal regulations, the FmHA filed a motion to modify the *Williams* consent decree, asserting that it was filed in response to this Court's comments in *Johnson*.

Pursuant to Paragraph 8 of the consent decree, the district court had retained jurisdiction "for the sole purpose of entertaining a motion to modify this order on the grounds that it, or any part of it, is in direct conflict with a specific holding of the United States Supreme Court, the Fifth Circuit, or its successor rendered subsequent to the date of this Order." In our judgment, the district court too narrowly limited its authority to amend the prospective effect of the decree only upon a judicial decision that directly conflicted with it or upon a showing of hardship by the agency.

Without regard to the terms of the decree, a court acting in equity has inherent power to modify the prospective effect of its decree in response to changed circumstances. *See System Federation No. 91 v. Wright*, 364 U.S. 642, 646–47, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961); *United States v. Swift & Co.*, 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932); *Roberts v. St. Regis Paper Co.*, 653 F.2d 166, 172 (5th Cir.1981 Unit B). *See also* Fed.R.Civ.P. 60(b)(5) (court can modify a judgment when it is no longer equitable that the judgment should have prospective application). That a consent decree is contractual in nature does not relinquish a court's power to revise it in the future. *Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460; *System Federation No. 91*, 369 U.S. 642, 81 S.Ct. 368.

The district court's reaction to the requested modification might well be correct as it might change procedures that would apply to mortgages negotiated prior to the amendments. The Government might not be able to in effect unilaterally change procedures concerning existing mortgages controlled by the consent decree. Two classes of mortgagors are not in the same situation, however: those with mortgages executed after the change in regulations, but before any modification in the consent decree; and those future mortgagors who will purchase homes financed under Section 502(a) of the National Housing Act of 1949 and whose mortgages will be held by FmHA.

The district court's refusal to consider modification of the requirements as to prospective application raises serious constitutional questions about the ability of a Government official to bargain away the discretionary duties vested in his office

that sound rules of construction dictate be avoided if fairly possible. Although the decree expressly mentions only judicial decisions as furnishing a base for modification, it should be read to be a more general reference to changes in the legal status of nonjudicial foreclosure, a reading that is both plausible and consistent with the interests brought to the negotiations by both parties.

The power to modify, however, may only be exercised under the appropriate circumstances. The district court, relying on *Roberts v. St. Regis Paper Co.*, 653 F.2d 166, 174 (5th Cir. Unit B 1981), refused to review the proposed modification because the Government failed to show extreme, unexpected hardship and oppression. *See generally Swift & Co.*, 286 U.S. at 119, 52 S.Ct. at 464, 76 L.Ed. 999.

*Swift* concerned a consent decree entered in 1920 ordering a measure of divestiture by and imposing a variety of restraints upon defendant meat packers. The Supreme Court concluded that the danger of monopoly and elimination of competition which led to the initial Government complaint and the decree had not been removed and there was still a danger of unlawful restraints of trade. The Court held that "nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions" would lead it to change the decree. *Swift*, 286 U.S. at 119, 52 S.Ct. at 464. Despite this strong language, the Supreme Court later recognized that *Swift*'s language must read in context. "*Swift* teaches that a decree may be changed upon an appropriate showing, and it holds that it may *not* be changed in the interests of the defendants if the purposes of the litigation as incorporated in the decree ... have not been fully achieved." *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 248, 88 S.Ct. 1496, 1499, 20 L.Ed.2d 562 (1968).

■ Thus, the job of a district court after *Swift* and *United Shoe* is to look at the particular facts and circumstances of the case to determine whether the modification satisfies the underlying purpose of the decree. The purpose of the initial action was to obtain for borrowers under the Act constitutional procedural due process in foreclosure proceedings. This was the purpose of the consent decree. *See Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed. 2d 287 (1970).

■ Once having learned from judicial decisions that its Act and Regulations are not consistent with constitutional due process, there is no rational reason why Congress and an agency have to follow the precise procedures established by a consent decree or a judicial decision. If a new statute and new regulations comport with constitutional due process, the Government should be permitted, at least prospectively, to act thereunder. A district court is free to modify the terms of a consent decree when a change in the law brings those terms in conflict with statutory objectives. *System Federation No. 91*, 364 U.S. at 651, 81 S.Ct. at 373. A change in relevant statutory law—such as in this case where Congress required that the FmHA ensure by regulation that due process rights are afforded to borrowers and regulations are promulgated in compliance with that mandate—is a fully adequate basis upon which modification to a consent decree may be based.

This case closely parallels *System Federation No. 91*, in which the defendant railroad company agreed in a consent decree not to operate "union shops," that is, workplaces in which persons not members of unions would be either excluded or subject to other forms of discrimination. Subsequent to the decree's entry, the Railway Labor Act was amended to permit railroads to negotiate with unions to establish union shops. The railroad moved for modification of the consent decree. The district court denied the motion, noting that the amended act "did no more than make negotiations for a union shop permissive ... [but] did not prohibit an agreement ... [that] a union shop should not exist." 364 U.S. at 646, 81 S.Ct. at 370. The Sixth Circuit affirmed, and the Supreme Court reversed. The Court noted that "to continue [the decree] after the 1951 amendment would be to render protection in no way

authorized by the needs of safeguarding statutory rights at the expense of a privilege denied and deniable to no other union." *Id.* at 648, 81 S.Ct. at 371–72. The Court emphasized that the change in the Railway Labor Act brought the decree in conflict with the statutory objectives, not in that the Act nullified the decree, but in that the decree prohibited a choice that Congress intended that unions and railroads should possess.

Here the congressional enactment that mandated the establishment of an administrative appeals procedure for the explicit purpose of solving serious due process deficiencies does not conflict with the underlying purpose of the consent decree. Amending the Housing Act so as to resolve due process problems on the administrative level demonstrates that Congress intended to allow the FmHA to continue to employ, in its discretion and with proper regulations, nonjudicial foreclosure proceedings. The prospective effect of the decree conflicts with the Housing Act by depriving the FmHA of a choice that Congress intended it should be able to exercise. Thus here, as in *System Federation No. 91*, the parties have no power to continue to insist upon the protection of their rights in a manner different from that chosen by Congress absent constitutional fault. Accordingly, if the FmHA's regulations have properly implemented the command of the statute and comport with constitutional due process, a question for the district court on remand, then the decree should be either vacated or modified so as to permit the FmHA to employ nonjudicial foreclosure proceedings in Georgia.

VACATED and REMANDED.