Barbara BREWER, Plaintiff, Appellant,

v.

Edward R. MADIGAN, etc., et al., Defendants, Appellees.

No. 91–1035.

United States Court of Appeals, First Circuit.

Heard May 10, 1991.

Decided Sept. 26, 1991.

Patrick Ende, with whom Pine Tree Legal Assistance, Inc., Augusta, Me., was on brief for plaintiff, appellant.

D. Bruce la Pierre, Appellate Staff, Civil Div., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Richard S. Cohen, U.S. Atty., Portland, Me., and Barbara C. Biddle, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., were on brief for defendants, appellees.

Before BREYER, Chief Judge, and ALDRICH and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

Barbara Brewer resided in a low-income rural housing project owned by Realty Resources, Inc., and financed by the Farmers Home Administration ("FmHA") under § 515 of Title V of the Housing Act of 1949, 42 U.S.C. § 1485. In July of 1987, Realty Resources, Inc., served Mrs. Brewer with an eviction notice, yet refused to grant her a hearing relying on a recent amendment to regulations which excluded evictions of tenants of FmHA-subsidized housing from the grievance and appeals procedure of the FmHA. 7 C.F.R. § 1944.-551–.559 (1990). Mrs. Brewer brought a class action on behalf of all Maine residents living in § 515 housing challenging the amendment as inconsistent with its enabling statute, 42 U.S.C. § 1480(g), and as an arbitrary and capricious action of the Secretary of Agriculture in violation of the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* The district court dismissed the complaint on its merits. We affirm.

## I. STATUTORY BACKGROUND

In 1978 Congress amended the tenant grievance and appeals procedures embodied in § 510(g) of the National Housing Act of 1949, codified at 42 U.S.C. § 1480(g). The amendment authorized the Secretary to issue rules and regulations ensuring that persons living in housing financed by the FmHA who are denied assistance or whose assistance is substantially reduced or terminated be given (1) written notice of the adverse decision and (2) an opportunity to present additional information on appeal to a person, other than the original decision-maker, who has the authority to reverse

the decision. Housing and Community Development Act of 1978, Pub.L. No. 95–557, § 503, 92 Stat. 2080, 2112; 42 U.S.C. § 1480(g). Within six months of its passage, the FmHA implemented this statute by promulgating tenant grievance and appeals procedure regulations which provided for administrative review of evictions. 7 C.F.R. § 1944.551–.559 (1990) (current provisions as amended). Upon their issuance, however, the FmHA invited public comments and announced its intention to republish the regulations after further study. 44 Fed.Reg. 54983 (Sept. 24, 1979).[1]

In 1982 the FmHA proposed a revision of its tenant grievance and appeals procedure regulations to, *inter alia*, "remove from the grievance process all eviction actions which are governed by State law." 47 Fed.Reg. 17300 (Apr. 22, 1982). After a comprehensive rulemaking process, the FmHA announced its final rule in which it introduced what it termed a "major change": that "the termination of tenancy and eviction will be conducted by a judicial process in accordance with State or local law." 48 Fed.Reg. at 56176 (Dec. 19, 1983). Specifically, the regulation, which is the subject of this appeal, now provides that "[t]he termination of tenancy and eviction must be based on material violation of the lease terms or other good cause" and that the landlord "shall not evict any tenant except by judicial action pursuant to State law." 7 C.F.R. § 1944.553(f) (1990).[2]

## II. STANDARD OF REVIEW

This case was submitted to the district court on a stipulated record. The question on appeal is therefore whether the district court committed error of law, and the applicable standard of review calls for *de novo* scrutiny. *New England Legal Foundation v. Massachusetts Port Authority*, 883 F.2d 157, 167 (1st Cir.1989). Since we are confronted with an agency's interpretation of a statute it administers, however, the scope of our *de novo* review is somewhat curtailed:

> When a court reviews an agency's construction of the statute it administers, it is confronted with two questions. First, always, is the question of whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent and ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S.

---

1. The regulations were first amended in 1980. In response to a concern that "[s]tate Laws have set procedures to be followed for termination of leases and evictions," the FmHA stated that its procedures "[were] intended to discourage evictions for other than material noncompliance with the lease or other good cause" and amended the regulations to provide that the tenant grievance and appeals procedure did not apply to evictions for failure to pay rent or for creating a dangerous condition. 45 Fed.Reg. at 70841, 70843 (Oct. 27, 1980) (7 C.F.R. § 1944.-554(a)(6)). Similarly, in response to a concern that "[t]he decision of the hearing officer or hearing panel should not affect the rights of a tenant to a trial *de novo*," the FmHA amended its regulations to provide that the decision of the hearing officer or panel "does not preclude either party's right thereafter to seek relief through the courts." 45 Fed.Reg. 70842, 70845

(7 C.F.R. § 1944.558(b)). Although other amendments were made, the basic scheme of resolving tenant grievances through informal meetings and administrative hearings was preserved.

2. Its original proposal to remove lease terminations and evictions from the tenant grievance and appeals procedures was modified inasmuch as the agency incorporated the requirement that eviction shall only be for material violation of the lease or for other good cause and that it must be by judicial action and not through "self help" or any other non-judicial process, even where authorized by State or local law. *Compare* 47 Fed.Reg. 17300, 17301 (Apr. 22, 1982) (proposed 7 C.F.R. § 1944.551(b) *with* 48 Fed. Reg. 56175, 56178 (Dec. 19, 1983) (final 7 C.F.R. § 1944.553(e), (f)).

837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). With these principles in mind, we evaluate the propriety of the regulation promulgated by the Secretary of Agriculture.

## III. DISCUSSION

### A

The question before this court is whether Congress required a particular form of review for evictions from FmHA-subsidized housing or whether it intended to provide the agency with a choice between administrative and judicial review. To answer this, we first look to the specific language of the statute at issue. The 1978 amendment to § 510(g) of the National Housing Act of 1949 provided that the Secretary of Agriculture shall have power to:

> issue rules and regulations which assure that applicants denied assistance under this subchapter or persons or organizations whose assistance is being substantially reduced or terminated are given written notice of the reasons for the denial, reduction or termination and are provided at least an opportunity to appeal an adverse decision and to present additional information relevant to that decision to a person, other than the person making the original determination, who has authority to reverse the decision.

42 U.S.C. § 1480(g). A plain reading of the statute reveals that it simply imposes two specific conditions on the rulemaking powers conferred upon the Secretary. Tenants of FmHA-subsidized housing whose assistance is altered to their detriment must be given, first, written notice of the adverse decision and, second, at least an opportunity to appeal and present additional information to a person, other than the original decisionmaker, with the authority to reverse the decision. Nothing in the terms of the statute expressly requires a judicial or an administrative review process. No mention of either process is made, nor is there any reference to any judicial, intra-agency or administrative mechanism. Thus, a fair assessment of the statute reveals language broad enough to allow for either interpretation.

Confronted with this argument, however, appellant directs our attention to the use of the word "appeal" in the statute to support her contention that Congress contemplated an administrative appeals process instead of a judicial one. "Appeal," her argument goes, connotes an affirmative action by one seeking review of another person's decision; and, being a defendant in an eviction action is not the same as allowing a person to affirmatively "appeal" a landlord's decision to evict. The argument is undeniably attractive, prompting us to turn to the statute's legislative history for guidance.

Section 1480(g) is the product of a compromise between two starkly different proposals for procedural protection of tenants in FmHA-subsidized housing. On the one hand, the bill originally approved by the House of Representatives, H.R. 12433, 95th Cong., 2d Sess. § 403 (1978), simply provided that an applicant denied assistance must receive written notice of the reasons for the decision. On the other hand, the bill originally approved by the Senate, S. 3084, 95th Cong., 2d Sess., § 504 (1978), established an administrative appeals process and spelled out in detail the tenant's procedural rights. However, the Conference Committee, whose version of § 1480(g) was approved without amendment, did not adopt the Senate bill's detailed proposal for an administrative appeals process nor the House's *de minimis* requirement of written notice of adverse decision. Instead, § 503 of the Conference Committee bill omitted the Senate's reference to an "appeals official" and its provision that tenants shall have "an opportunity to have the decision of the appeals officer reviewed by the Secretary" and imposed only two procedural requirements, the now familiar "written notice" of the adverse decision and "opportunity to appeal and present additional information to a [different] person ... with the authority to reverse the decision." *Compare* Conf.Comm. Bill § 503 *with* S. 3084, § 504 and 42 U.S.C. § 1480(g) (final version).

By deleting these provisions and substituting the more general language, the Conference Committee implicitly reject-

ed the Senate's proposed requirement of administrative proceedings. Both Houses of Congress subsequently enacted this bill without change or debate. *See* 124 Cong. Rec. 37395–399, 38568–572 (1978). Thus, the legislative history of § 1480(g) demonstrates that Congress rejected the imposition of any particular requirement that procedural protection of tenants must be provided exclusively through an administrative process and instead chose language which left the agency with discretion to satisfy the two statutory procedural requirements through either administrative or judicial proceedings. *See Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 200, 95 S.Ct. 392, 401, 42 L.Ed.2d 378 (1974) (deletion of language by the Conference Committee "strongly militates against a judgment that Congress intended a result that it expressly declined to enact").[3]

■ The next question for this court would therefore be whether the judicial mechanism designated by the Secretary satisfies the two procedural requirements imposed by the statute. We believe that the challenged regulation, as amended in 1983 to require written notice and judicial action for evictions, satisfies the language of § 1480(g). The "written notice" requirement of 42 U.S.C. § 1480(g) is satisfied by the provision requiring the landlord to give tenants a written notice of eviction stating the lease term allegedly violated, the reasons for the eviction and the fact that the eviction must take place through judicial action. 7 C.F.R. § 1944.553(3). Section 1480(g)'s requirement of "an opportunity to appeal an adverse decision and to present additional information relevant to that decision to a person, other than the person making the original determination, who has authority to reverse the decision" is satisfied by the provision that landlords "shall not evict any tenant except by judicial action pursuant to State or local law." 7 C.F.R. § 1944.533(f). A state judicial proceeding provides tenants with at least an opportunity to appeal and allows them to present their position (and "any additional information") to the state or local judge, a person different from the original decisionmaker who has authority to reverse the landlord's decision to evict.[4] Thus, the 1983 amendments to the FmHA's tenant grievance and appeals procedure are consistent with the plain meaning of the terms of the statute and satisfy the requirement that an agency "must give effect to the unambiguously expressed intent of Con-

---

3. Appellant predictably argues that the legislative history supports the contrary position. Her reading of § 1480(g)'s legislative history, however, is colored by numerous statements made by proponents of bills which clearly contemplated that the statute would create an administrative review process but which never made it past the committee level. For instance, the appellant cites to comments made by proponents of S. 1150, 95th Cong. 1st Sess. (1977), and H.R. 11712, 95th Cong.2d Sess. (1978), both of which outlined detailed administrative review processes for the protection of users of the FmHA program. *See, e.g., Rural Housing Act of 1977: Hearings on S. 1150 Before the Subcommittee on Rural Housing, Senate Committee on Banking, Housing and Urban Affairs*, 95th Cong., 1st Sess. 395 (1977) & *Housing and Community Development Amendments of 1978, Hearings Before the Subcommittee on Housing and Community Development of the House Committee on Banking, Finance and Urban Affairs*, 95th Cong.2d Sess. 1691 (1978). Concern about the overly formal nature of the procedure proposed by this bill, however, led Congress to incorporate it into the less formal S. 3084, *supra*. Similarly, H.R. 11712 was replaced by H.R. 12433, *supra*. And, we have already recounted how the original

versions of S. 3084 and H.R. 12433 matured into the final rendition of § 1480(g). *See* H.Conf. Rep. No. 95–1792, 95th Cong., 2d Sess. (Oct. 14, 1978) at 88–89, *reprinted in* 1978 U.S.Code Cong. & Admin.News 4773, 4908–09.

4. The procedure, in other words, is as follows: when a landlord of FmHA–subsidized housing (as opposed to a regular landlord) decides to evict a tenant, he or she may not do so for any reason whatsoever, but only for a material violation of the lease terms or for good cause. If the tenant is dissatisfied with the landlord's decision, the eviction may only be accomplished by judicial action. Before initiating the eviction proceeding, however, the landlord must provide the tenant with written notice stating the lease term violation or the reason for the eviction and informing the tenant that the eviction must be accomplished through judicial action. At the eviction proceeding, the tenant has the opportunity to present his or her arguments against the eviction and any other additional information or defenses to a person other than the evictor, *i.e.*, the state or local judge, who has the authority to effectively reverse the eviction by preventing it.

gress." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781.

**B**

Appellant nevertheless presents two arguments in support of her position that § 1480(g) requires administrative review. We examine them in turn.

■ 1. Appellant would have this court hold that the Secretary is legally estopped from providing for judicial rather than administrative review of evictions, on two grounds. First, she invokes the doctrine of judicial estoppel, recognized by this court in the context of private litigation in *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 212 (1st Cir.1987). The judicial estoppel doctrine protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in a prior proceeding. *See Reynolds v. Commissioner of Internal Revenue,* 861 F.2d 469, 472 (6th Cir.1988). Appellant argues that the FmHA is estopped from providing for review of evictions by judicial action because in *Williams v. Butz,* 843 F.2d 1335 (11th Cir.), *cert. denied,* 488 U.S. 956, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988), the agency allegedly took the position that § 1480(g) required an administrative appeals process. We need not consider the applicability of the doctrine of judicial estoppel to the facts of this case, however, because we do not find the FmHA's position in *Williams* incompatible with its stance here and, additionally, *Williams,* as we read it, was not based on any inconsistent theory advanced by the FmHA in that case. A brief explanation of our reasoning follows.

In *Williams,* the Eleventh Circuit characterized the FmHA's posture as an appeal from "the denial of its motion to modify a consent decree which required it to use *only* judicial proceedings to foreclose mortgages on homes purchased under the Rural Housing loan program of Section 502(a),

Title V of the Housing Act of 1949, 42 U.S.C. § 1472 *et seq.*" *Williams,* 843 F.2d at 1335 (emphasis ours). Due process deficiencies in the regulations implementing the agency's foreclosure procedures had led the FmHA to enter into a consent decree whereby the agency agreed, *inter alia,* to utilize only the judicial process for foreclosures of mortgages on homes purchased under § 502 of the National Housing Act of 1949, 42 U.S.C. § 1472. After the 1978 amendment to § 1480(g), the FmHA sought to amend its regulations to provide for administrative review of mortgage foreclosures which it believed cured the due process faults, but was confronted with the consent decree's provision that allowed for modification of the decree only if it was rendered illegal by subsequent court decisions. Thus, the agency filed a motion seeking to modify the consent decree.

As is evident from the above, the agency's position in *Williams* was not that § 1480(g) required an administrative process for all decisions adversely affecting the rights of tenants of FmHA-subsidized housing; rather, the FmHA argued there, as it does before us, that the two procedural requirements imposed by § 1480(g) could be satisfied by either a judicial or an administrative process.[5] In mortgage foreclosure cases (which are wholly distinct from eviction cases, a fact which presents yet another ground for finding that the agency's position has not been inconsistent), the agency opined that the procedural requirements of § 1480(g) were best served through the administrative route. We therefore do not find that the agency's positions have been inconsistent.

Furthermore, the question of whether Congress had intended a particular mode of review for decisions adversely affecting the rights of tenants of FmHA-subsidized housing was, at best, only tangentially related to the real issue before the *Williams* court, which was whether a federal court

---

**5.** On this appeal, both parties have alerted the court to the fact that while in its initial brief in *Williams* the agency stated that § 1480(g) required an administrative process, in its reply brief it was careful to note that the statute imposed only two procedural requirements which could be satisfied either by a judicial or an administrative process.

acting in equity had the power to modify the prospective effect of a consent decree in response to a change in circumstances. The question before this court was therefore never squarely presented to, and consequently never directly resolved by, the *Williams* court. The agency was never required to express its official position on the matter, nor was any position it may have expressed determinative of the outcome of the case. In fact, although two statements in the opinion appear to read § 1480(g) as requiring an administrative process, *see Williams*, 843 F.2d at 1337, 1339, others support the opposite view, *id.* at 1339, a circumstance which buttresses our conclusion that *Williams* does not stand for any proposition in conflict with the decision we reach today.

■ The second aspect of appellant's argument is based on a straightforward application of the estoppel doctrine: because the agency initially made evictions subject to an administrative appeals process, appellant contends that the FmHA is now estopped from providing for judicial evictions. *See Wilcox v. Ives*, 864 F.2d 915, 924–25 (1st Cir.1988) (inconsistent agency position entitled to considerably less deference than a consistently held agency view); *St. Luke's Hospital v. Secretary of Health and Human Services*, 810 F.2d 325, 331 (1st Cir.1987) (same). We have two answers to this argument. To begin with, the Court has noted as recently as *NLRB v. Curtin Matheson Scientific*, 494 U.S. 775, 110 S.Ct. 1542, 1549, 108 L.Ed.2d 801 (1990), that "a[n] [agency] rule is entitled to deference even if it represents a departure from the [agency's] prior policy." *See also NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 265–66, 95 S.Ct. 959, 967–68, 43 L.Ed.2d 171 (1975) ("The use by an administrative agency of the evolutional approach is particularly fitting. To hold that the Board's earlier decisions froze the development of [an] important aspect of the national labor law would misconceive the nature of administrative decisionmaking."); *Lechmere, Inc. v. NLRB*, 914 F.2d 313, 317–18 (1st Cir.1990) (quoting *Curtin Matheson & J. Weingarten*). And, in any event, the inconsistency here is more a matter of form than substance. While it is true that the 1979 regulations included evictions in the informal administrative review process, these regulations were promulgated immediately after the amendments to the Housing Act of 1949 and, most importantly, with a simultaneous invitation for comments evincing the agency's intention of republishing the regulations after further study. Thus, rather than providing any basis for the estoppel argument, the original regulations and their subsequent amendments support appellee's position that from the outset it believed tenants of FmHA-subsidized housing could be afforded their statutory procedural rights in either an administrative or a judicial proceeding.

2. Finally, appellant contends that the agency rescinded a previous regulation and dramatically changed its policy in an arbitrary and capricious manner, thus violating the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*

■ The standard for judicial review of informal notice and comment rulemaking is whether the agency action was "arbitrary and capricious." 5 U.S.C. § 706(2)(A). The scope of review under this standard is narrow, and a court may not set aside an agency rule that is "rational" and "based on a consideration of the relevant factors." *Motor Vehicle Manufacturers Assoc. v. State Farm Mutual*, 463 U.S. 29, 42–43, 103 S.Ct. 2856, 2866–2867, 77 L.Ed.2d 443 (1983). "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" *Id.* As was stated by the Court in *State Farm:*

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a differ-

ence in view or the product of agency expertise.

*Id. See also Conservation Law Found., Inc. v. Secretary of the Interior,* 864 F.2d 954, 957–58 (1st Cir.1989). While "an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first place," *State Farm,* 463 U.S. at 42, 103 S.Ct. at 2866, the same arbitrary and capricious standard applies, *id.* at 41, 103 S.Ct. at 2865. Appellant argues that the agency's actions ran counter to the principles quoted above. We do not agree.

First, we agree with appellee that the "relevant factors" the agency had to be *primarily* concerned with were the requirements of written notice and an opportunity to appeal and present additional evidence to a person, other than the evictor, with the authority to reverse the decision. The enabling statute, 42 U.S.C. § 1480(g), is the principal source of relevant factors to be considered by the agency in promulgating regulations, *see Pension Ben. Guar. Corp. v. LTV Corp.,* —— U.S. ——, 110 S.Ct. 2668, 2675–76, 110 L.Ed.2d 579 (1990), and appellant has been unable to identify any other "relevant factors" that the agency should have actually considered.

The rulemaking process demonstrates that the FmHA considered the two relevant statutory procedural due process factors in fashioning its final rule. The original 1982 rulemaking proposal simply provided that evictions were to take place "according to state law." 47 Fed.Reg. 17300, 17301. After comments were received, however, the proposal was amended, and the final rule adopted in 1983 provided that evictions

shall only be for material lease violations or for other good cause and that "[t]he borrower shall not evict a tenant *except by judicial action* pursuant to State or local law." 48 Fed.Reg. 56175, 56178 (final 7 C.F.R. § 1944.553(f)) (emphasis supplied); *see also* footnote 2, *supra.* Moreover, the FmHA also made clear that landlords would be prohibited from resorting to "self-help" evictions, even where authorized by state law. 48 Fed.Reg. 56176.[6] Thus, the history of the regulation shows that the agency gave suitable consideration to the relevant statutory procedural due process factors.

■ The chief "relevant factor" which appellant submits was not considered by the agency was the adequacy of state eviction laws to protect the rights of tenants. Appellant cites numerous comments that were filed by tenants and tenant advocates about the inadequacy of state laws to protect the rights of tenants in eviction cases, stating, among other things, that many had no comprehensive landlord-tenant laws and that many did not provide adequate due process protections to tenants. However, we think it is self-evident that in those states where the eviction laws do not meet the two requirements imposed by Congress, landlords will not be able to evict tenants through these summary proceedings but will instead have to resort to the ordinary civil process available in all courts of general jurisdiction. Resort to the states' judicial processes will thus serve to guarantee that the procedural rights provided by Congress to FmHA tenants will be protected. This being so, the agency did not have to engage in a case-by-case evaluation of the eviction procedures of each individual state.[7]

---

**6.** The other statutory due process factor, the "written notice" requirement, was a part of both the original 1982 proposed rule and the 1983 final rule.

**7.** In any case, an agency does not have an obligation to respond to every comment, unless the comment at issue is significant and casts doubt on the reasonableness of the agency's decision. *See Baltimore Gas & Elec. Co. v. United States,* 817 F.2d 108, 116 (D.C.Cir.1987). In our opinion, none of the several, additional factors mentioned by appellant rose to this level. (Among

the additional factors mentioned by appellant were that "numerous states permitted self-help evictions," that "state courts were not accustomed to applying a good cause standard," that "the summary nature of state proceedings did not provide ... an opportunity to obtain representation or to conduct discovery," that "appeals from lower court state proceedings were burdensome due to state bonding requirements," that "many states did not prohibit retaliatory evictions," and that many state eviction procedures were lenient toward landlords and did not

Similarly unavailing is appellant's contention that the agency altered its course without supplying a reasoned analysis or explanation for the change. In promulgating the initial regulations providing for an administrative appeals process, the agency made it clear that it was doing so without the benefit of public comments and that it intended to republish the regulations once public comments were received. 44 Fed.Reg. 54983 (Sept. 24, 1979). The FmHA first expressed concern about the duplicative nature of existing regulations in 1980 when it amended its regulations to exclude evictions for failure to pay rent and for creating dangerous conditions from the coverage of these procedures. 45 Fed. Reg. 70841, 70843; *see also* footnote 1, *supra*. At the beginning of the 1982–83 rulemaking session, the FmHA stated that its proposal to remove evictions from the grievance process was the result of "objections by the FmHA personnel that the existing grievance procedure [was] burdensome and difficult to administer." *See* 47 Fed.Reg. 17300 (Apr. 22, 1982). The agency was also concerned with the duplicative nature of the proceedings due to the fact that a tenant or landlord who was dissatisfied with the outcome of an eviction contest under the tenant grievance and appeals procedure regulations could still seek relief through the courts under 7 C.F.R. § 1944.558(b). *See* 45 Fed.Reg. 70841, 70842, 70845. Additionally, the agency invited all commentators to a meeting on December 6, 1982, in Washington, D.C., to follow up on the comments that were received. Numerous responses from tenants, legal service organizations, owners and managers of FmHA–financed projects and FmHA personnel followed, expressing support for both sides of the issue. Finally, on December 19, 1983, the agency published a final rule, simultaneously discussing the comments that it had received throughout the rulemaking process. 48 Fed.Reg. 56175. Thus, our review of the rulemaking history leads us to the conclusion that the agency properly examined the relevant data and articulated a satisfactory explanation for its actions.[8]

For the foregoing reasons, the district court's decision is *affirmed.*

---

require the courts to issue written opinions. *See* Appellant's Brief, pp. 42–45, 48).

8. Appellant places particular emphasis on the fact that the agency allegedly did not rely on the so-called Smith Study, a systematic survey of the effectiveness of the grievance procedures by a former FmHA employee as part of her participation in the FmHA/American University Joint Mid–Management Training Program. However, the record reveals that two major representatives of the tenants' interests, the National Housing Law Project and the Housing Assistance Council, made detailed comments about the study and that the study was in fact considered before the initiation of the 1982–83 rulemaking proceeding at the time of its completion and presentation. Thus, the study need not have been reconsidered during the rulemaking process or made part of the administrative record, as it had been incorporated into the agency's institutional knowledge. *See Action for Children's Television v. FCC,* 564 F.2d 458, 471 & n. 22 (D.C.Cir.1977).